## MOSHER v EQUITABLE LIFE ASSURANCE SOCIETY OF THE U S

Ohio Appeals, 5th Dist, Ashland Co

Decided Nov 27, 1936

Weldon & Huston, Mansfield, for appellant.

Wheeler & Adrian, Cleveland, and H. E. Culbertson, Ashland, for appellee.

**OPINION**

By SHERICK, J.

John M. Mosher, appellee, in 1924, procured a contract of life insurance from the appellant. The policy contained a provision that in case of total and permanent disability of the insured before reaching the age of sixty years the insurer would waive payment of future premiums upon receipt of proper proof, and during the continuance thereof would pay the sum of twenty dollars per month. The policy also contained the following clause:

"Disability shall be deemed to be total when it is of such an extent that the insured is prevented thereby from engaging in any occupation or performing any work for compensation of financial value, and such total disability shall be presumed to be permanent when it is present and has existed continuously for not less than three months; and further, the entire and irrecoverable loss of sight of both eyes, or the severance of both hands at or above the wrists, or of both feet at or above the ankles, or of one entire hand and one entire foot, will of themselves be considered as total and permanent disability within the meaning of this provision."

In October of 1934, the insured, then of the age of fifty-nine years, sustained an injury to his left arm. Amputation below the elbow became necessary. Upon receipt of proof of loss the association compensated the insured for one month. The plaintiff by this suit seeks recovery for the five-month period immediately following, upon the theory that he is still totally and permanently disabled. The defendant by its answer denies that the plaintiff has been disabled from engaging "In any occupation or performing any work for compensation of financial value" since the expiration of the first month after amputation.

Upon trial a verdict was rendered in favor of the insured and judgment entered thereon, from which the insurer appeals. The principal errors relied upon for a reversal of this cause are in the admission and exclusion of evidence, the refusal of the court to give certain special requests, errors of commission in the general charge, and incompatible propositions of law given in certain special requests with portions of the general charge on the same subject. All of the irregularities relied upon find their premise in the claim of the appellant that the trial court misconstrued the terms of the policy when it limited proof of total and permanent disability to the narrow limits of the claimant's sole occupation, which was that of farming. It is maintained that a proper interpretation of the contract's plain provision embraces the pursuing of any gainful occupation and that the cause was tried upon an incorrect theory highly prejudicial to the rights of the appellant.

We have not been cited to any Ohio authority, or are we able to find that any

Ohio court has passed upon this precise question. We do, however, learn that the court in **Rose v New York Life Ins. Co., 127 Oh St 265, 187 NE 859**, had before it a question of total and permanent disability under a life policy. That policy prescribed that disability shall be deemed to be total when the insured "is prevented thereby from engaging in any occupation whatsoever for remuneration or profit." This clause is very like that appearing in the present contract. The court in the Rose case made the following pronouncement:

"Where the meaning of a contract of insurance against loss resulting from total and permanent disability can be fully and clearly ascertained from the words of the contract itself, the court may not resort to surrounding circumstances or the conduct of the parties for aid in its interpretation."

And further on, in the course of its opinion, it is reasoned that:
"When the meaning of the contract can be fully and clearly ascertained from its own words, we are at liberty to go no further in search of aid in its interpretation."

In the light of this rule of construction of insurance contracts our attention must of necessity be directed to the query as to whether the phraseology and the words employed in this policy are ambiguous and susceptible of construction. If they are clear and plain, then this court is not privileged to rewrite the contract. Without again setting forth the phrase ▆▆▆▆▆▆ ▆ hereinbefore twice repeated, we must and do conclude that the same is perfectly understandable. It is not susceptible of two meetings. It is not therefore in need of construction.

It is pointed out in Hurley v Bankers Life Co., 198 Iowa 1129, 199 NW 343, 37 A. L.R. 146, at page 1130, that:

"Many cases have been before the courts, involving construction of contracts of this character, which, however, are not always identical in phraseology. The cases fall quite readily into two general classes; those where the policy provides for indemnity if the insured is disabled from transacting the duties pertaining to the occupation in which he is then engaged; and those wherein the policy provides for indemnity if the insured is disabled from performing any work or following any occupation."

In the first class of cases it is universally held that the test is ability to perform the insured's "then" occupation. The present controversy represents the second class. We readily confess that authorities are to be found pro and con of almost equal weight which do and do not extend the test of the first class to that of the second. If it were a matter of the heart, prompted by sympathy for an insured, who long thought himself insured against permanent and total disability in his own occupation or profession, fortified by the fact that the insurer drew the contract which promised much but accomplished little, then we would be inclined to the view that the contracting parties intended, irrespective of the language employed, to insure as to the insured's "then" employment. Unfortunately for the insured this court feels bound to view the matter in the light of reason and the mandate of the rule of interpretation of contracts prescribed by this court's superior in the Rose case, supra.

With all due respect for those courts which have applied the test of the first class to the second class as well, we have diligently sought to find a case wherein the court felt called upon to interpret a contract where an insured had one occupation at the time of the execution of the contract and another when total permanent disability overtook him. Such a situation should not be unusual. We are, however, unable to find such a case. The thought comes, that when such a situation does arrive in those jurisdictions, the question of the intention of the parties may become vexatious, for it could hardly be reasoned that insurance written for a skilled mechanic covered one who was thereafter disabled in farming. Perhaps the dilemma might be met with the thought that the "then" occupation, that is, such as existed at the time of disability, was intended. If it should be so reasoned, it would naturally follow that that which was determined as intended was not within the contemplation of the parties when the contract was executed.

Some authority contra suggests that the insurer's claim may lead to absurd ends, in that even selling shoe laces and pencils may be a gainful occupation. It rather strikes us that such is the asking of alms. In view of the holdings of the courts of this state as to what amounts to "total permanent disability" we entertain little fear that an insurer would successfully lead a court into such an absurdity. Juries may be safely entrusted to determine in

such cases that total and permanent incapacity exists.

We perceive little profit to be gained in listing the authorities which have considered the question now before this court. They may be noted in the Hurley case, supra, and the notes appearing in 37 A.L.R. 151, 24 A.L.R. 206, 51 A.L.R. 1049, 79 A.L.R. 862 and 98 A.L.R. 781

It is this court's view that the appellant's conception of the theory of this case was correct and that the cause should have been so tried.

We feel called upon to consider independently two grounds of error urged by the appellant. It was request- ed before argument that the court give the following special request, which was refused:

"I charge you that you must take it as common knowledge that a man with only one arm and not otherwise incapacitated may do much valuable work and engage in many gainful occupations; and the plaintiff in this case will not be entitled to your verdict simply because of the loss of his forearm as alleged. He must go further and prove by a preponderance of the testimony that the loss of this forearm has incapacitated him totally and permanently from engaging in any occupation or performing any work for compensation of financial value."

It is a matter of common knowledge that one-armed men, not otherwise incapacitated by mental or physical disability, are daily performing gainful labor. We readily perceive that where many do perform some labor, another, by reason of age or infirmity, may be unable to perform any work. We think that the matter of common knowledge was properly qualified and that the request should have been given. The jury would have thereby been instructed that it was within its province to determine whether the loss of the insured's arm and its present tenderness or soreness, incapacitated him totally and permanently, or whether this disability, coupled with his age or other circumstances totally incapacitated him.

During the course of the defense, the appellant called seven one-armed men as expert witnesses, who were unacquainted with the plaintiff. Three of these were permitted to testify as to what labor they were able to and did perform. Each was asked a hypothetical question as to their opinion as to whether the plaintiff was able to do certain farm work and act in the capacity of a hand on the farm, limited, of course, by the fact of the loss of one arm. An objection to these questions was sustained. The record discloses that they would have answered that the plaintiff could have performed the farm labor capable of being performed by a one-armed farm hand. The court concluded that the testimony of these three witnesses was improper and took that evidence from the jury and refused permission to call the remaining four witnesses. The trial court did not err in these rulings. Because seven one-armed men may do certain things, it does not follow that the eighth man, the plaintiff, could perform like labors. He might lack the adaptability of the other seven. The age, health, physical stamina or nervous temperament of the plaintiff was not considered or shown to have been identical with the witness testifying. The evidence in fact calls for a medical opinion as to the plaintiff's general health or assumes such to be equal to their own at the time of their misfortune.

It is the judgment of this court that the cause be reversed and remanded for a new trial.

Judgment reversed.

LEMERT, PJ, and MONTGOMERY, J, concur.