## CONTINENTAL CASUALTY CO. v. WAGNER.

### No. 14480.

United States Court of Appeals
Eighth Circuit.

April 10, 1952.

Rehearing Denied May 2, 1952.

James C. Jones, Jr., St. Louis, Mo. (Lon Hocker and Jones, Hocker, Gladney & Grand all of St. Louis, Mo., on the brief), for appellant.

James S. McClellan, St. Louis, Mo. (Richard D. Gunn and Willson, Cunningham & McClellan, all of St. Louis, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and RIDDICK and COLLET, Circuit Judges.

RIDDICK, Circuit Judge.

The question on this appeal is the correct interpretation of a policy of insurance by which the appellant, Continental Casualty Company, insured the appellee, Wagner, against loss of business time caused by accidental injury or sickness.

The policy is an Ohio contract issued on June 27, 1922, for an annual premium of $116. The insurer agreed to pay the in-

sured an indemnity of $200 a month in the event of a total loss of business time. So far as material to the question stated, the provisions of the contract are as follows:

"The Insured is by occupation a Secretary, and Assistant General Manager, Direction of Sales and Business Manager classified by the Company as —Select.

\* \* \* \* \* \*

" \* \* \* if the Insured shall be disabled by accidental injury or by sickness and by reason of such disability shall necessarily suffer loss of business time, the Company will pay indemnity for such loss as follows:—

"A. Total Loss of Business Time. If the said loss is of all business time, the Company will pay said monthly indemnity so long as the Insured lives and continuously suffers such total loss.

"B. Partial Loss of Business Time. If the said loss of business time is not total but results from the physical inability of the Insured to perform work substantially essential to the duty or duties of his occupation, and if further such partial loss of time immediately succeeds a period of total loss of time for which indemnity is payable under the provisions of this part, the Company will pay one-half said monthly indemnity for the continuous period of such partial loss of time not exceeding six months.

\* \* \* \* \* \*

"This policy includes the endorsements and attached papers if any, and contains the entire contract of insurance except as it may be modified by the Company's classification of risks and premium rates in the event that the Insured is injured or contracts sickness after having changed his occupation to one classified by the Company as more hazardous than that stated in the policy \* \* \* in which event the Company will pay only such portion of the indemnities provided in the policy as the premium paid would have purchased at the rate but within the limits so fixed by the Company for such more hazardous occupation.

\* \* \* \* \* \*

"If the Insured shall at any time change his occupation to one classified by the Company as less hazardous than that stated in the policy, the Company, upon written request of the Insured, and surrender of the policy, will cancel the same and will return to the Insured the unearned premium.

\* \* \* \* \* \*

"At any time during the life of this policy, if the Insured changes his occupation to one different from that stated in this policy, the Company hereby agrees, upon the surrender of this policy, to issue in lieu thereof, upon the written request of the Insured, a new policy containing the same provisions as this policy, except a change in the amount of the benefits payable, the new policy to provide such an amount payable for loss of life and disability as the premium paid for this policy will purchase at the rates but within the limits fixed by the Company for such different occupation."

In 1924 the insured moved from Cleveland, Ohio, to St. Louis, Missouri, where he was employed by St. Louis University as a teacher of public speaking. The insurer was notified of this change of occupation and residence. From 1924 until February 1946 the insured continued in his work at the University. He continued to pay and insurer continued to accept the premiums on the policy. In February 1946 as the result of illness, necessitating an operation for removal of a lung, the insured became and has since remained totally unable to engage in the occupation of teaching public speaking.

From February 16, 1946, to September 16, 1950, the insurer paid the insured the monthly indemnity of $200 provided by the policy for total continuous loss of business time. It refused to pay the monthly indemnity after September 16, 1950. On the date of the trial in the District Court five of these payments were past due. On September 16, 1950, the insured was totally unable to engage in any occupation.

From July 1948 for a period of thirteen and one-half months the insured was em-

ployed by the Oblate Fathers in St. Louis in connection with a campaign for charitable contributions for the construction of a building known as the "King's House." In this work he consulted with the campaign chairman, helped prepare solicitors' aids and subscription forms, checked subscriptions and records, prepared letters, notices, and reports, controlled disbursements, and supervised the office of the campaign headquarters. For this work he was paid a salary of $535 a month. The insured served in substantially the same capacity from August 1949 to August 1950 in a drive for funds for the construction of the Cardinal Glennon Hospital, receiving a salary of $550 a month.

During the insured's employment in these charity drives he made monthly reports to the insurer on blank forms furnished by it. On the forms the question, "What work, if any, can you do?" was answered either "none," "none yet," or "none as yet." Also during this employment the insurer knew through inquiry of its adjuster that insured was working. The adjuster did not ask if the insured was being paid for his work and the insured did not tell the adjuster that he was receiving compensation.

This action was brought by the insurer to recover the disability payments made to the insured during the period of his gainful employment. The insured contends that the expression "total loss of business time," as used in the policy, means such a loss in any occupation in which insured was able to engage for compensation or profit; that it was not obligated by the policy of insurance to pay indemnity to the insured for the time of his employment or thereafter; that its payments for this time were procured by the false and fraudulent reports of the insured on which the insurer relied. The insured counterclaimed for the indemnity payments which the insurer refused to make after September 16, 1950.

After the trial in which a jury was waived, the District Court ruled that:

"Plaintiff insured, and does insure, defendant in his occupation, which is that of teacher of public speaking, and the words 'business time' refer to and mean the time devoted by defendant to his said occupation; plaintiff is therefore legally obligated to pay the defendant the monthly indemnity of $200.00 so long as defendant is continuously unable, because of sickness, to engage in, and perform the duties of, his said occupation of teacher of public speaking, even though he performs other work for compensation.

"That the payments made under said policy by the plaintiff to the defendant" during the period of his employment "were legally due and owing to the defendant and cannot be recovered by plaintiff.

"That defendant is entitled to recover from plaintiff in this action the sum of $1,000 * * * representing five monthly payments of $200.00 each, due and payable respectively on October 16, November 16 and December 16, 1950, and January 16 and February 16, 1951, being all of the monthly payments under said policy due and unpaid as of March 8, 1951, when this cause was tried".

Judgment was entered for the defendant on the complaint of the plaintiff and on defendant's counterclaim.

 The Ohio courts have not interpreted an insurance contract like the policy under consideration. But the rules for the interpretation of insurance contracts in general are stated in a number of Ohio cases. The settled Ohio rule is that in cases of ambiguity the interpretation adopted will be that favorable to the insured; that any fair doubt should be resolved against the insurance company. Greulich v. Monnin, 142 Ohio St. 113, 50 N.E.2d 310, 312, 149 A.L.R. 477; Stuhlbarg v. Metropolitan Life Ins. Co., 143 Ohio St. 390, 55 N.E.2d 640, 644; Gibbons v. Metropolitan Life Ins. Co., 135 Ohio St. 481, 21 N.E.2d 588. And where the meaning of a contract of insurance can be fully and clearly ascertained from its language, courts may not resort to surrounding circumstances or the conduct of the parties in aid of its interpretation. Rose v. New York Life Ins. Co., 127 Ohio St. 265, 187 N.E. 859; Mosher v. Equitable Life Assurance Society, 57 Ohio App. 435, 14 N.E.2d 413, 415–416. In the

Mosher case, after quoting the Iowa court in Hurley v. Bankers Life Ins. Co., 198 Iowa 1129, 199 N.W. 343, 37 A.L.R. 146, to the effect that cases involving contracts of disability insurance fall into two classes, the first in which the policy provides indemnity if the insured is disabled from performing the duties of his occupation, and the second in which the indemnity is payable only if insured is disabled from performing any work or following any occupation, the court said: "In the first class of cases it is universally held that the test is ability to perform the insured's 'then' occupation."

We can not say that the language of the contract involved here is so clear and plain that the interpretation placed upon it by the trial court is erroneous. The contract provides a monthly indemnity for the loss of all business time, payable so long as the loss is total and continuous; and a monthly indemnity for partial loss of business time, defined as the inability of insured to perform the work substantially essential to the duties of "his occupation," the indemnity for partial loss of time payable only for a period not to exceed six months following a period of total disability for which the insured is liable under the contract. The occupation of the insured, "his occupation," is stated in some detail on the face of the policy and classified as "Select." The premium payable under the policy is based upon the hazards incident to the insured's occupation. Provision is made for changes in the indemnity payable under the policy if the insured loses business time after having changed his occupation to one classified by the insured as more hazardous than that stated in the policy, or if his loss of business time results from illness or accident occurring while insured is engaged in duties pertaining to a more hazardous occupation. Insured is given the option on the change of his occupation to one less hazardous to surrender the policy and receive return of unearned premiums. Since the option in this contingency is granted to the insured and not reserved to the insurer, it follows that on change to a less hazardous occupation the insured was entitled to keep the policy in force by the payment of the specified premium.

Whether the occupation of teacher of public speaking was less or more hazardous than the occupation of insured at the time of the issue of the policy is of no importance since the insurer was notified of the change of occupation and continued to accept the premiums on the original policy for more than twenty years after knowledge of the change. We think that the fact that the premium chargeable under the contract was determined by the company's classification of the risk incident to the occupation in which insured was engaged not only at the time the policy was issued but at the time when the insured changed his occupation, and the repeated references in the policy to "his occupation" sustain the trial court. The insured's occupation at the time of disabling illness or accident, as well as at the time of issue, was a material factor in the determination of the risk assumed by the insurer and of the protection granted the insured. The language of the policy is the insurer's language. Had it intended the words "loss of business time" to refer to any occupation or work in which the insured was able to engage for profit or compensation, it could easily have said so.

Each case of this kind must depend upon the language of the contract under construction. As noted above, we have found no Ohio case involving an identical or similar contract of insurance, nor are there many reported cases in other jurisdictions. Among the latter which support the conclusion we have reached are: Pacific Mutual Life Ins. Co. v. Arnold, 262 Ky. 267, 90 S.W.2d 44, 51, holding that in a policy insuring against "continuous loss of business time" the quoted phrase refers to the occupation of the insured and not to the whole range of business pursuits; Pennington v. Pacific Mutual Life Ins. Co., 85 Iowa 468, 52 N.W. 482, 483, where the policy recited that the insured was a "local fireman under classification engineers" and insured against continuous and total loss "of such business time" as might result from injury; Hetzel v. Pacific Mutual Life Ins. Co., 108 W.Va. 22, 150 S.E. 385, 387, where the contract of insurance was essentially the same as the one involved here, the court

holding that the insured was entitled to recover if unable by reason of his disability to perform the duties necessary to the practical prosecution of the occupation under which he was insured. Cf. Continental Casualty Co. v. Johnson, 314 Ky. 53, 234 S.W.2d 190.

Affirmed.