The BUDD COMPANY,
Plaintiff-Appellant,

v.

The TRAVELERS INDEMNITY COMPANY, Defendant-Appellee.

No. 86–1325.

United States Court of Appeals,
Sixth Circuit.

Argued April 21, 1987.

Decided June 5, 1987.

Donald J. Gasiorek, Sommers, Schwartz, Silver, and Schwartz, P.C., Southfield, Mich., David Kotzian, Frank S. Perkin (argued), for plaintiff-appellant.

Mark D. Wilmarth (argued), Detroit, Mich., Susan H. Zitterman, for defendant-appellee.

Before MARTIN and MILBURN, Circuit Judges, and ALDRICH, District Judge.[*]

MILBURN, Circuit Judge.

Plaintiff-appellant The Budd Company ("Budd") appeals from the judgment of the district court allowing apportionment of attorney's fees incurred in the course of common discovery in a multi-district products liability proceeding. For the reasons that follow, we affirm.

## I.

Budd manufactures equipment, including multi-piece wheel assemblies for trucks, for use in the transportation industry. The Travelers Indemnity Company ("Travel-

ers") provided Budd with personal injury products liability insurance for occurrences resulting in bodily injury arising between August 1, 1975, and November 1, 1977. Under the terms of the policy, Travelers was obligated to defend any suit against Budd that involved an occurrence during the coverage period.

Specifically, the policy provided that:

*"The company [Travelers] will pay,* in addition to the limit of liability: (a) *all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company* and all interest on the entire amount of any judgment therein which accrues after entry of judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon; ...."

(emphasis supplied). Further, the policy stated:

"The company [Travelers] will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages ..., and *the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage,* even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient...."

(emphasis supplied).

On November 21, 1978, Budd was named as a defendant in *Rodriguez v. Firestone Tire & Rubber Co.,* No. H-77-288 (S.D. Tex.1978). The plaintiff in *Rodriguez* sought damages for injuries sustained in an accident involving a multi-piece wheel assembly manufactured by Budd. The injury occurred on September 23, 1975, within the coverage period. Accordingly, Travelers retained local counsel in Texas to defend the suit.

---

[*] The Honorable Ann Aldrich, United States District Judge, Northern District of Ohio, sitting by designation.

On January 18, 1979, the Judicial Panel on Multi-District Litigation (J.P.M.L.) issued an opinion finding that common issues of fact existed among seventeen multi-piece rim product liability actions, including *Rodriguez*, pending in federal district courts. Accordingly, the J.P.M.L. issued an order transferring the actions to the District Court for the Western District of Missouri for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. These proceedings were docketed as *In re Multi-Piece Rim Product Liability Litigation* (hereinafter MDL362).

Upon the transfer, Travelers retained the services of the Kansas City law firm of Lathrop, Koontz, Righter, Clagett & Norquist (hereinafter Lathrop, Koontz) to represent Budd in the litigation. Travelers paid all the expenses of the MDL362 litigation while *Rodriguez* was the only action in that proceeding in which Budd was a defendant. On April 23, 1979, the judge in the MDL362 proceedings issued an order delineating eight issues common to the seventeen transferred cases and ordered consolidated discovery.

Subsequently, Budd was named as a defendant in the additional cases transferred to MDL362. Of the eleven cases in which Budd was a defendant, only three were covered by the Travelers policy.[1]

After September 1979, Lathrop, Koontz billed separately and Budd paid separately for legal services unique to the actions not insured by Travelers. However, Lathrop, Koontz billed both Budd and Travelers for work on issues common to the insured and uninsured actions.

By correspondence dated September 23, 1980, Travelers informed Budd that the legal fees on the common issues should be prorated. Travelers informed Budd that another defendant in MDL362 had two law firms representing it—one for cases in which it was insured and another for cases in which it was self-insured. Travelers

also noted that it had a policy of prorating expenses when the insured becomes self-insured for some of the loss.

Eventually, the parties agreed to share expenses without prejudice to their right to file suit at a later date. Because Travelers was not informed of the addition of cases outside the scope of the policies, it paid more than its pro rata share in 1979 and 1980. To correct the imbalance, Budd paid more than its pro rata share in 1981–82. By January 1983, Travelers paid one-third and Budd paid two-thirds of Lathrop, Koontz's monthly bill.

On March 1, 1984, Budd instituted the present action seeking a declaratory judgment and damages against Travelers for the portion of the attorney's fees Budd had paid to Lathrop, Koontz. At the time the complaint was filed, this amount was $420,-508.30. Budd took the position that, since Travelers was required to pay for the defense in the *Rodriguez* case, it should be obligated to pay all expenses of common discovery as long as *Rodriguez* was on the MDL362 docket. Travelers took the position that the legal expenses should have been prorated in proportion to the number of cases for which each party was responsible during each billing period.

The district court rejected Budd's contention that all of Lathrop, Koontz's charges would have been incurred if *Rodriguez* was the only case on the MDL362 docket. "While there is no case which addresses the specific factual and legal issues put by Budd's position, fundamental principles of insurance law, logic and equitable considerations support Travelers' position." District Court Opinion at 5. Consequently, it ordered the fees to be apportioned.

Because the district court determined that the fees should have been prorated, a secondary problem arose. The district court concluded that, because Travelers was not notified that Budd was a defendant in the *Bowers* and *Hale* cases, Travelers

---

**1.** The *Rodriguez, Smith* and *Farr* proceedings involved accidents occurring within the policy period. Although the litigation in *Hale* apparently involved an accident occurring within the policy period, Budd failed to give timely notice of the accident. In this appeal, Budd does not challenge the district court's conclusion that eight of the eleven cases were outside the scope of the policy coverage.

had paid more than its pro rata share. However, Travelers had failed to file a counterclaim for reimbursement of any overpayment. The district court, over Budd's objection, granted Travelers' motion for leave to file a counterclaim after it issued its opinion on the issue of fee apportionment.

In granting the motion for leave to file the counterclaim, the district court relied on Fed.R.Civ.P. 13(f), which provides that leave to amend may be granted "when justice requires." It rejected Budd's argument that prejudice would result through allowance of the amendment, because it concluded that Budd had notice that the amount of fees was disputed, and that it had a full and fair opportunity to litigate the issue. The parties agreed that the amount at issue on the counterclaim is $14,523.46.

In this appeal, two issues are presented for review:

(1) whether the district court erred in its conclusion that fees should be apportioned among the covered and noncovered cases;

(2) whether the district court abused its discretion in granting Travelers' motion for leave to file its counterclaim.

## II.

### A.

■ We agree with the district court that resolution of the present dispute is governed by our decision in *Insurance Company of North America v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212 (6th Cir.1980), *modified*, 657 F.2d 814 (6th Cir.), *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). In *Forty-Eight Insulations*, the defendant manufacturer was self-insured for certain periods in time during which it incurred liability for asbestosis. This court adopted the exposure theory for asbestosis liability, holding that liability would be "prorated . . . among all of the insurance companies which were on the risk while the injured victim was breathing in asbestos." *Id.* at 1224.

The same formula was utilized for apportionment of attorney's fees. Forty-Eight

objected to the apportionment, arguing that it "should not be liable for any costs of defense, even if part or most of the underlying lawsuit concerned periods of time when Forty-Eight was uninsured." *Id.* We rejected Forty-Eight's argument.

> Were we to adopt Forty-Eight's position on defense costs a manufacturer which had insurance coverage for only one year out of 20 would be entitled to a complete defense of all asbestos actions the same as a manufacturer which had coverage for 20 years out of 20. Neither logic nor precedent support such a result.

*Id.* at 1225.

The dispute in the present case fits squarely within the analytical framework developed in *Forty-Eight Insulations*. In the present case, as in *Forty-Eight Insulations*, an incident triggering the duty to defend has occurred. In both cases, the defense provided by the insurer conferred a benefit upon an aspect of the litigation outside the scope of the policy's coverage.

In *Forty-Eight Insulations*, we refused to allow the insured to reap the benefits of a free defense when the underlying liability clearly fell outside the scope of the policy coverage. In the present case, we are compelled to do the same.

Budd argues, as did the manufacturer in *Forty-Eight Insulations*, that the insurer's duty to defend is broader than its duty to indemnify, and that it arises whenever the allegations in the complaint indicate a possibility that coverage exists. Moreover, when a given lawsuit contains multiple claims, "an insurer has a duty to defend, despite theories of liability asserted against an insured which are not covered under the policy, if there are any theories of recovery that fall within the policy." *Dochod v. Central Mutual Insurance Co.*, 81 Mich. App. 63, 67, 264 N.W.2d 122, 124 (1978); *see also Reurink Bros. Star Silo, Inc. v. Maryland Casualty Co.*, 131 Mich.App. 139, 142–43, 345 N.W.2d 659, 660–61 (1983); *A & G Associates, Inc. v. Michigan Mutual Insurance Co.*, 110 Mich.App. 293, 312 N.W.2d 235 (1981) (per curiam); *Detroit Edison Co. v. Michigan Mutual Insurance*

*Co.,* 102 Mich.App. 136, 141–42, 301 N.W.2d 832, 835 (1980).

The analogy to cases such as these was found unpersuasive in *Forty-Eight Insulations.* In *Forty-Eight Insulations,* we concluded that no apportionment is allowed in cases such as those upon which the insured relied because " 'there is no reasonable means of prorating the costs of defense between the covered and the not-covered items.' " 633 F.2d at 1224 (quoting *National Steel Construction Co. v. National Union Fire Insurance Co.,* 14 Wash.App. 573, 543 P.2d 642, 644 (1975)).

These considerations do not apply where defense costs can be readily apportioned. The duty to defend arises solely under contract. An insurer contracts to pay the entire cost of defending a claim which has arisen within the policy period. The insurer has not contracted to pay defense costs for occurrences which took place outside the policy period. Where the distinction can be readily made, the insured must pay its fair share for the defense of the non-covered risk. *Id.* at 1224–25. *See also Burlington Drug Co. v. Royal Globe Insurance Co.,* 616 F.Supp. 481 (D.Vt.1985) (allowing apportionment of attorney's fees between covered and noncovered claims); *Crist v. Insurance Company of North America,* 529 F.Supp. 601 (D.Utah 1982) (approving apportionment rule developed in *Forty-Eight Insulations* ); *Lowenthal v. Security Insurance Co.,* 50 Md.App. 112, 436 A.2d 493 (1981) (allowing apportionment when proper allocation of fees is readily determinable).

Budd argues that our decision in *Forty-Eight Insulations* does not compel fee apportionment in the present case because no reasonable basis exists for prorating fees between those cases covered by the Travelers policy and those for which Budd was self-insured. We disagree. As the district court observed, "[e]ach Budd case came into MDL 362 at a specific time. Since Lathrop, Koontz billed on a periodic basis,

it is entirely reasonable to pro-rate its charges in proportion to the number of cases each party was responsible for during each billing period." District Court Opinion at 8–9.

The basis upon which the district court apportioned fees in the present case is as reasonable as apportionment based upon the length of exposure to asbestos. Because we believe the result reached by the district court is consistent with the analysis developed by us in *Forty-Eight Insulations,* we affirm the judgment of the district court on the issue of fee apportionment.

**B.**

The proceedings in the district court were initiated when Budd filed a complaint seeking a declaratory judgment defining the respective parties' liability for attorney's fees incurred in the MDL362 proceedings. During the course of the proceedings, Travelers learned that it had paid more than its pro rata share of the attorney's fees.[2] The amount of overpayment was subsequently stipulated to be $14,-523.46.

Although Travelers requested recovery for overpayment in the joint pretrial statement and trial brief, both filed on March 19, 1985, it never filed a counterclaim. After the district court ruled on the propriety of fee apportionment, Travelers sought and received, over Budd's objection, leave to file the counterclaim pursuant to Fed.R. Civ.P. 13(f). *Budd Co. v. Travelers Indemnity Co.,* 109 F.R.D. 561 (E.D.Mich. 1986). Budd contends that the district court abused its discretion in granting Travelers' motion.

The decision to allow amendment in order to add an omitted counterclaim "is a matter of judicial discretion, [and] it can be reversed on appeal only if the party can demonstrate that the court abused its discretion." 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1430 at 155 (1971). "The clause in Rule 13(f) permitting amendments 'when justice requires' is es-

---

**2.** Travelers apparently had notice of the potential overpayment by March 1, 1984, when the

complaint in the present action was filed.

pecially flexible and enables the court to exercise its discretion and permit amendment whenever it seems desirable to do so." *Id. See Silvers v. TTC Industries,* 484 F.2d 194, 198 (6th Cir.1973) (leave to amend pursuant to Rule 13(f) should be freely granted).

In exercising its discretion under Rule 13(f), the district court must balance "the equities, including whether the non-moving party will be prejudiced, whether additional discovery will be required, and whether the court's docket will be strained." *Barnes Group, Inc. v. C & C Products, Inc.,* 716 F.2d 1023, 1035 n. 35 (4th Cir.1983) (per curiam); *Rohner, Gehrig & Co. v. Capital City Bank,* 655 F.2d 571, 576 (5th Cir. Unit B 1981); *Munters Corp. v. Burgess Industries, Inc.,* 450 F.Supp. 1195, 1206–07 (S.D.N.Y.1977); *cf. Smith Contracting Corp. v. Trojan Construction Co.,* 192 F.2d 234, 235–36 (10th Cir.1951) (district court abused discretion in failing to allow amendment when facts were easily ascertainable and no prejudice would result to the nonmoving party).

Courts appear particularly hesitant to deny amendment, even at late stages in the proceedings, when the interest in resolving all related issues militates in favor of such a result and no prejudice is demonstrated.[3] *See, e.g., T.J. Stevenson & Co. v. 81,193 Bags of Flour,* 629 F.2d 338, 369–71 (5th Cir.1980) (district court did not abuse its discretion in allowing counterclaim to be added after close of all evidence when nonmoving party was not prejudiced); *Spartan Grain & Mill Co. v. Ayers,* 517 F.2d 214, 220–21 (5th Cir.1975) (district court abused its discretion in refusing to allow amendment when no prejudice or delay would have resulted); *Munters Corp.,* 450 F.Supp. at 1206–07 ("interest of justice" required leave to file counterclaim on eve of trial when no prejudice would result); *Louisville Trust Co. v. Glenn,* 66 F.Supp. 872, 874–75 (W.D.Ky.1946) (amendment allowed after end of trial when justice and reason required all issues regarding tax liability for years in issue to be litigated in a single proceeding).

In the present case, the district court concluded that Budd would not be prejudiced by allowing the omitted counterclaim to be added. As noted above, the fact that Travelers sought recovery of the overpayment was revealed in the pretrial statement and trial brief. Indeed, the only issue before the district court was the proper allocation of attorney's fees. Although Budd argues that "it is not certain whether the District Court heard all relevant evidence on such claim," it points to no relevant evidence the district court failed to consider.

We believe that the district court gave careful consideration to the relevant factors before concluding that the omitted counterclaim should be allowed. Under the circumstances of the present case, we conclude that its resolution of this issue was not an abuse of discretion.

### III.

The judgment of the district court is AFFIRMED.

---

**3.** The parties to the present dispute agree that the counterclaim is compulsory. This factor also militates in favor of the conclusion that leave to amend should be liberally granted. *See, e.g., Spartan Grain & Mill Co. v. Ayers,* 517 F.2d 214, 220 (5th Cir.1975).