915 F.2d 1571
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John R. GAINES, Plaintiff-Appellee,
v.
Suzanne FARESE, Defendant-Appellant,
Patricia Adamo, Defendant.
 Nos. 87-5567, 87-6006.
 United States Court of Appeals, Sixth Circuit.
 Oct. 11, 1990.
 
 Before KENNEDY and RALPH B. GUY, Jr., Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Defendant appeals from a jury verdict in favor of plaintiff on several counterclaims asserted by defendant. Defendant's appeal focuses on the District Court's denial of defendant's motion for leave to amend her pleadings and its rulings on certain evidentiary matters. Because we find that the District Court acted appropriately, we AFFIRM.
 
 
 2
 This case arose out of a contract executed between Suzanne Farese ("defendant") and Patricia Adamo ("Adamo"). In May 1982, defendant sought to purchase from Adamo fractional interests ("shares") in two thoroughbred stallions, Vaguely Noble and Dust Commander. Adamo previously had purchased these shares from syndicates, both of which were managed by John Gaines ("plaintiff").[1] In accordance with the syndicate agreement, Adamo notified plaintiff of defendant's desire to purchase Adamo's shares. Plaintiff, in his capacity as manager of the syndicates, approved of the sale of the shares, but advised Adamo that the shares would not be transferred to defendant until Adamo paid in full for these shares. Plaintiff also notified defendant of this condition. Adamo still owed the syndicates $260,353.80 for these shares pursuant to the conditional sales agreements executed between Adamo and the respective syndicates.
 
 
 3
 Under the purchase and sale agreement between Adamo and defendant, defendant agreed to pay the monies owed by Adamo to the syndicates directly to the syndicates within 30 days from the execution of the purchase and sale agreement. The remaining consideration due Adamo under the purchase and sale agreement would be paid to Adamo within 30 days from the execution of such agreement, this amount constituting the equity Adamo had accrued in her shares through her payments. Defendant structured the transaction in this way to ensure that she obtained clear title to the shares, free of any liens or debts created by Adamo's agreements with the syndicates. Adamo warranted that she would deliver clear title to the shares to defendant upon payment in full by defendant. Both parties had the right to terminate the agreement upon material breach of the agreement by the other party. Adamo and defendant executed the agreement on July 30, 1982. Defendant paid Adamo $25,000 at the time the parties executed this agreement. The total consideration under the purchase and sale agreement was $300,000: $175,000 for the Dust Commander share and $125,000 for the Vaguely Noble share.
 
 
 4
 Defendant made no payments to the syndicates in June, July or August of 1982. Defendant contacted a representative of plaintiff on September 7, 1982, and promised to pay the monies due the syndicates in two to three weeks. A representative of plaintiff wrote defendant on September 21, 1982, recounting both the conversation of September 7 and defendant's promise to pay the amounts due in two to three weeks. The letter also stated that "we have received the transfer documents on these share[s], but will not consider them to be transferred until the funds are received." Despite her promise, defendant failed to make any payments to plaintiff.
 
 
 5
 On October 15, 1982, Adamo informed defendant by mailgram that the contract was terminated. Defendant's failure to pay the syndicates in accordance with the terms of the contract constituted grounds for Adamo's withdrawal of her offer and retention of the shares.[2] On October 27, 1982, a representative of plaintiff wrote defendant, informing defendant that the syndicates no longer considered her the purchaser of the shares because of her failure to make any payments to them. On November 4, 1982, defendant sent a check to plaintiff in the amount of $50,000, attempting to secure her interest in the shares. Plaintiff returned the check to defendant two days later. Plaintiff subsequently sold the Vaguely Noble share to another party for $170,000.
 
 
 6
 After Adamo cancelled the purchase and sale agreement, defendant filed actions against Adamo and plaintiff in Florida state court. This action was voluntarily dismissed. Defendant then brought suit in the United States District Court of Florida. The District Court dismissed the action without prejudice because Adamo was an essential party to the action, but her presence destroyed the court's diversity jurisdiction.
 
 
 7
 Plaintiff then filed the instant action against defendant and Adamo on March 23, 1983, seeking a declaration of his rights under the purchase and sale agreement executed between Adamo and defendant. Defendant filed a counterclaim and crossclaim for specific performance and monetary damages based on a theory of conspiracy. Adamo then filed a suggestion of bankruptcy during the initial stages of this proceeding. The District Court, relying on documentation in the record and on information supplied by defendant in her motion for summary judgment, granted a declaratory judgment in favor of plaintiff. Defendant appealed this decision, and this Court concluded that entry of judgment for plaintiff was inappropriate because there existed genuinely disputed questions of material fact. Gaines v. Farese, No. 85-5324 (6th Cir. June 11, 1986) (unpublished opinion). Accordingly, we reversed and remanded this case to the District Court.
 
 
 8
 On remand, defendant sought to hire an attorney to handle her case. Defendant had been representing herself up until this time. Defendant retained a lawyer on December 22, 1986. On January 20, 1987, defendant moved for leave to amend her counterclaim and crossclaim to allege the following: 1) a claim against plaintiff for his refusal to recognize defendant as the owner of a share of the Vaguely Noble syndicate; 2) a claim against plaintiff for wrongful repossession and/or conversion committed in bad faith; 3) a claim against plaintiff for breach of substituted contract and/or novation; 4) a claim against plaintiff for tortious inducement to breach contract; 5) a claim against plaintiff for breach of fiduciary duty; and 6) a claim for joint and several liability under agency law. The District Court denied this motion, noting that the case was almost four years old and that the trial was scheduled to start on April 20, 1987, three months from the date of this motion. Trial ensued, and the jury determined that plaintiff was not liable to defendant. This timely appeal followed.
 
 
 9
 We note that two of the six issues raised on appeal, the denial of a motion for a partial summary judgment on a conversion theory and erroneous limitation on the jury instructions, are resolved by addressing the third issue, denial of leave for defendant to amend her crossclaim and counterclaim.[3] The remaining three issues will be dealt with specifically.
 
 
 10
 Defendant first contends that the District Court abused its discretion when it denied defendant's motion for leave to amend her crossclaim and counterclaim. Originally, defendant alleged that plaintiff conspired with Adamo to prevent the transfer of the shares to defendant. Based on this theory, defendant argued that plaintiff converted her interest in these shares when plaintiff sold them to someone other than defendant. Six months after this Court reversed and remanded this case to the District Court, and three months prior to trial,[4] defendant moved for leave to amend her crossclaim and counterclaim. No proposed amendments were tendered to the court with the motion. The District Court denied this motion.
 
 
 11
 Fed.R.Civ.P. 13(f) provides: "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." A court's decision whether to allow such an amendment is a matter of judicial discretion and will be reversed on appeal only upon a showing of abuse of discretion. Budd Co. v. Travelers Indem. Co., 820 F.2d 787, 791 (6th Cir.1987).
 
 
 12
 In making a Rule 13(f) determination, a court must balance the equities of the case. Id. Relevant factors include whether the non-moving party will be prejudiced, whether additional discovery will be required, and whether the court's docket will be strained. Although delay in bringing the motion may be considered by the court, this factor cannot be the sole reason for the denial of a Rule 13(f) motion. Teft v. Seward, 689 F.2d 637 (6th Cir.1982). One court has noted, however, that "delay becomes fatal at some period of time." Chitimacha Tribe of La. v. Harry L. Laws Co., 690 F.2d 1157 (5th Cir.1982), cert. denied, 464 U.S. 814 (1983). " 'If the [issue] lurks in the case, vacillation can cause the other party irreparable injury.' " Tenneco Resins, Inc. v. Reeves Bros., Inc., 752 F.2d 630, 634 (Fed.Cir.1985) (quoting Strauss v. Douglas Aircraft Co., 404 F.2d 1152 (2d Cir.1968) ). In this regard, delay in and of itself is not a valid reason for denial; but delay coupled with awareness of the facts giving rise to the claim can constitute an adequate reason for denial. See Carson v. Polley, 689 F.2d 562, 584 (5th Cir.1982).
 
 
 13
 Although several reasons weigh in favor of granting defendant's motion, defendant's motion created burdens that justify its denial. Defendant sought to add six new claims three months prior to the start of trial. Several of these claims would increase the scope of discovery.[5] The addition of these claims so close to trial would impose significant burdens on plaintiff. Moreover, defendant failed to tender the proposed amended pleading with the motion. This failure created further delay in identifying the specific issues for trial and complicated plaintiff's task of preparing for trial. Finally, defendant's first assertion of these claims came more than four years after she was made aware of the facts underlying these claims. Delay with such awareness constitutes a valid reason for denial of a Rule 13(f) motion. See Federal Dep. Ins. Corp. v. Staudinger, 797 F.2d 908 (10th Cir.1986) (affirming the trial court's denial because defendant's motion occurred sixteen months after defendant became aware of the underlying facts giving rise to the claim). The District Court did not abuse its discretion in denying defendant's motion.
 
 
 14
 Defendant filed a motion in limine to prohibit any mention that defendant's husband was in prison and the nature of his conviction. The District Court reserved its decision until the question arose at trial because the course of the proceedings would determine whether the information was relevant. Defendant urges that the postponement of this decision was error. We disagree. It was appropriate for the District Court to withhold a definitive ruling under these circumstances. Defendant voluntarily disclosed this information to the jury at trial so that no occasion arose for the District Court to make an evidentiary ruling.
 
 
 15
 One of the parties to the case, Adamo, could not be located prior to trial. During trial, however, Adamo showed up to testify on behalf of plaintiff. Defendant claims that she was never notified that Adamo would testify at trial. At trial, defendant did not object to this witness testifying, but defendant did object to Adamo's testimony that she never received $25,000 from defendant. The District Court, recognizing that defendant should be given some opportunity to ascertain how this testimony affected her case, called a recess. Defendant alleges that the District Court erred by not prohibiting Adamo's testimony.
 
 
 16
 We first note that defendant raised no objection at trial to the testimony of Adamo. Defendant cannot remain silent at trial and then assert error on appeal. Great Lakes Gas Transmission Co. v. Grayco Constructors, Inc., 506 F.2d 498 (6th Cir.1974), cert. denied, 420 U.S. 947 (1975). Moreover, the District Court provided defendant time to obtain evidence to rebut Adamo's testimony. Thus, the admission of this evidence did not unfairly prejudice defendant.
 
 
 17
 Finally, defendant sought to admit letters that made settlement offers by plaintiff to defendant. The District Court did not allow these letters to be admitted. Defendant contends that these letters were relevant and supported defendant's theory that plaintiff was liable. The law is clear, however, that offers of settlement cannot be used to prove liability. Fed.R.Evid. 408.
 
 
 18
 For the foregoing reasons, we AFFIRM the judgment of the District Court.
 
 
 
 [1]
 These syndicates were created by agreements executed between John Gaines and the respective owners of the stallions. The syndicate agreement for Vaguely Noble created 40 shares in the stallion, each of which was sold for $125,000. Each share represented an undivided 1/40 interest in the stallion, but no shareholder had a right to the possession of the stallion or a right to control or govern the operation of the syndicate. Gaines maintained possession of the stallion and controlled the syndicate. Each shareholder was responsible for paying his pro rata portion of expenses incurred as a result of the care and handling of the stallion. In return, each shareholder was entitled to his pro rata portion of income realized from the stallion, the principal source of income accruing from the breeding of the stallion with mares. Shareholders had the right to sell their shares to another person, except that current shareholders had a right of first refusal prior to such shares being sold. If no shareholder exercised this right, then the shares could be sold to another person, but the shares remained subject to the syndicate agreement
 When a person purchased a share from the Vaguely Noble syndicate, a conditional sales agreement and security agreement were executed between Gaines and the purchaser. Under this agreement, the purchaser allowed Gaines to retain title to the share being sold and agreed that the retained title constituted a purchase money security interest in the share. The purchaser could sell his share to a third party, and the purchaser was not required to place any specific language or conditions in the sales contract executed between the purchaser and third party.
 The syndicate agreement for Dust Commander was similar to the Vaguely Noble syndicate agreement. This agreement created 30 shares in Dust Commander. The syndicate manager was Gainesway Farm, Inc., the president of which was Gaines. When a person purchased a share from the Dust Commander syndicate, a bill of conditional sale and security agreement were executed between Gaines and the purchaser.
 
 
 [2]
 Apparently, defendant paid Adamo all monies due her under the purchase and sale agreement. This amount paid to Adamo, and the legitimacy of defendant's claim that Adamo must repay it, was resolved in a bankruptcy proceeding in favor of defendant. Thus, our decision addresses only the potential obligations and liability of plaintiff to defendant
 
 
 [3]
 Defendant filed a motion for partial summary judgment. The motion argued for summary judgment on several claims: 1) conversion by Adamo and plaintiff of defendant's shares; 2) breach of the purchase and sale agreement by Adamo; 3) and reckless indifference by plaintiff entitling defendant to punitive damages. We note that these claims were not in defendant's initial crossclaim and counterclaim, but were some of the issues defendant sought to add through her motion for leave to amend. The attempt to amend the crossclaim and counterclaim, however, was denied. Thus, the issues raised in this motion for partial summary judgment had not been raised by defendant in her pleadings. Similarly, defendant argues that the District Court improperly limited defendant's theory of recovery to conspiracy. Defendant alleges that the jury should have been instructed on the law of unlawful deprivation of ownership and the right to consummate a sale. As noted, these claims were not in the original crossclaim and counterclaim. Thus, the court limited its jury instructions to the claims pleaded by the parties in the absence of a motion to amend the pleadings to conform to the evidence. See Fed.R.Civ.P. 15(b)
 The viability of these issues turns on whether the District Court abused its discretion in denying defendant's motion for leave to amend her crossclaim and counterclaim. Since, as we hold, the District Court did not abuse its discretion, then defendant's motion for partial summary judgment and request for certain jury instructions were also properly denied because they were beyond the scope of the pleadings.
 
 
 [4]
 At the time defendant moved for leave to amend her pleadings, January 20, 1987, the District Court rescheduled the trial date from February 9, 1987, to April 20, 1987. Thus, defendant actually contemplated moving for leave to amend her pleadings less than three weeks prior to the start of trial
 
 
 [5]
 For example, defendant's claim for conversion based on Article 9 of the Uniform Commercial Code presents evidentiary and legal issues beyond the present scope of discovery