United States Court of Appeals,

Fifth Circuit.

No. 92-7499.

GULF CHEMICAL & METALLURGICAL CORPORATION and Cheminter Corporation,
Plaintiffs-Appellants Cross-Appellees,

v.

ASSOCIATED METALS & MINERALS CORPORATION, et al., Defendants,

Associated Metals & Minerals Corporation, General Star Indemnity, Insurance Company of North
America, a/k/a Cigna Property and Casualty Companies, and International Surplus Lines Insurance
Company, Defendants-Appellees,

and

Birmingham Fire Insurance Company of Pennsylvania, Defendant-Appellee Cross-Appellant.

Sept. 13, 1993.

Appeals from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, REAVLEY and BARKSDALE, Circuit Judges.

REAVLEY, Circuit Judge:

Gulf Chemical & Metallurgical Corporation (Gulf) sued its insurers and its former parent

corporation for breach of contract and declaratory judgment, alleging that these defendants ignored

their contractual obligations to defend Gulf in an ongoing toxic-tort case that features some 2000

plaintiffs. On summary judgment, the district court apportioned Gulf's defense costs among Gulf and

two of Gulf's insurers. We vacate the judgment and instruct changed apportionment.

I. BACKGROUND

From 1973 to 1984, Associated Metals & Minerals Corporation (ASOMA) operated a

chemical plant in Freeport, Texas through an unincorporated division (ASOMA's Chemical Division).

ASOMA's Chemical Division shipped molybdenum trioxide (molyoxide) to Lone Star Steel

Corporation (Lone Star) between June 18, 1981 and May 4, 1982.

ASOMA formed Gulf in December 1984 under Texas law, and transferred the assets of

ASOMA's Chemical Division to Gulf on January 17, 1985 in exchange for all of Gulf's outstanding

shares. ASOMA then sold Gulf's stock to Cheminter Corporation, under which Gulf has operated

the Freeport plant.[1] Gulf shipped molyoxide to Lone Star between January 20, 1986 and January 12, 1988.

Approximately 5000 former employees of Lone Star have sued approximately 2000 manufacturers and suppliers of chemicals that Lone Star used in its steel mill, claiming that the chemicals caused them various latent bodily injuries from 1946 to 1990. This consolidated litigation is pending in a Morris County, Texas court, styled *Fowler et al. v. Union Carbide Corp. et al.* (76th Dist.Ct., No. 15477). The *Fowler* plaintiffs joined Gulf as a defendant on October 16, 1987. Their August 1990 consolidated complaint (the *Fowler* complaint) alleges that Gulf is strictly liable for their injuries as a consequence of its sale of molyoxide to Lone Star.

Gulf filed this diversity suit in federal court to enforce the contractual obligations of various parties to pay for Gulf's defense in the *Fowler* litigation. These parties include ASOMA and four of Gulf's general comprehensive liability (GCL) insurers: International Surplus Lines Insurance Company (ISLIC), General Star Indemnity Company (GenStar), Birmingham Fire and Insurance Company of Pennsylvania (Birmingham), and Insurance Company of North America (INA).

In the January 18, 1985 Stock Purchase Agreement, ASOMA agreed

> to indemnify [Cheminter] and Gulf and hold each of them harmless from and against any and all liabilities and obligations arising from the conduct by Gulf [or ASOMA's Chemical Division] or [ASOMA] prior to [January 18, 1985], or arising from the ownership, possession or use prior to [January 18, 1985] of the assets employed in [the business of Gulf or ASOMA's Chemical Division.]

The indemnity agreement entitles Gulf to "reasonable legal and other costs incurred in defending against or investigating any claim of liability."

ISLIC provided Gulf GCL coverage from January 17, 1985 to January 17, 1986. GenStar provided Gulf GCL coverage from January 17, 1986 to July 1, 1986. Birmingham provided Gulf GCL coverage from June 1, 1987 to June 1, 1988. INA provided Gulf GCL coverage from June 1, 1988 to June 1, 1989. The policies of ISLIC, GenStar, and Birmingham all provide:

> the [insurer] shall have the right and duty to defend any suit against the insured seeking damages on account of ... bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent....

---

[1] As Gulf's parent and co-party, Cheminter joins Gulf in all of its arguments in this case.

INA's policy provides:

> [INA] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [INA] will have the right and duty to defend any "suit" seeking those damages.

Gulf's GCL insurer from July 1, 1986 to July 1, 1987 did not agree to defend or indemnify Gulf for claims made subsequent to the term of the policy, and Gulf has not sued that insurer.

The district court disposed of Gulf's entire contract suit for monetary and declaratory relief by summary judgment, and explained its judgment in a series of orders. The court dismissed Gulf's claims against ASOMA after finding it "highly unlikely" that the *Fowler* plaintiffs are suing Gulf for the molyoxide shipments made by ASOMA's Chemical Division.

As for Gulf's insurers, the court held that "the [*Fowler* plaintiffs'] allegations of bodily injury resulting from continuous exposure to chemicals triggers a duty of defense by the terms of each policy." However, the court held that an "expected or intended" injury exclusion in INA's policy excuses INA from defending Gulf. *See Gulf Chem. & Metallurgical Corp. v. Associated Metals and Minerals Corp.,* 765 F.Supp. 375, 376 (S.D.Tex.1991). The court also held that ISLIC owes Gulf no duty of defense because ISLIC's policy expired on January 17, 1986, three days before Gulf first shipped molyoxide to Lone Star.

The district court then read our precedent to require coverage-time-based proration of the defense costs among GenStar, Birmingham, and Gulf itself, because Gulf was essentially self-insured between July 1, 1986 and June 1, 1987. The court held that "the relevant exposure period with respect to [Gulf] and its insurers is January 20, 1986 to January 12, 1988," the dates of Gulf's first and last molyoxide shipments to Lone Star.

Gulf appeals, claiming that the district court erred by: 1) dismissing INA, ISLIC, and ASOMA; 2) requiring Gulf to contribute to the costs of its defense; and 3) dismissing Gulf's claims for attorney fees and breach of the duty of good-faith dealing.[2] Birmingham cross-appeals, claiming that the district court's apportionment formula is erroneous.

---

[2]The district court denied Gulf's claim for attorney fees against ASOMA because New York law, which governs the Stock Purchase Agreement, does not permit the recovery of attorney's fees unless specifically provided for in the contract. Gulf does not contest this ruling.

## II. ANALYSIS

We review the district court's summary judgment *de novo,* reviewing the record evidence in the light most favorable to the party against whom the motion is made. *See Walker v. Sears, Roebuck & Co.,* 853 F.2d 355, 358 (5th Cir.1988). New York law governs our interpretation of the Stock Purchase Agreement, and no party argues that the district court erred by interpreting the various insurance policies according to Texas law.

A. THE DISTRICT COURT'S DISMISSAL OF ASOMA, ISLIC, AND INA

Gulf argues that the record does not support the district court's summary judgment in favor of ASOMA, INA, or ISLIC. We agree, and find Gulf entitled, for different reasons, to recovery against ASOMA, INA, and ISLIC.

*1. New York Law and ASOMA*

In the Stock Purchase Agreement, ASOMA agreed to pay all "reasonable legal and other costs incurred in defending against or investigating any claim of liability" made against Gulf arising from the conduct of Gulf or ASOMA prior to January 18, 1985. The *Fowler* plaintiffs have sued Gulf for damages from their exposure to toxic chemicals between 1946 and 1990.

Going beyond the allegations in the *Fowler* complaints, the district court requested evidence which it later used to determine that Gulf *should* not have been sued for conduct prior to the acquisition by Cheminter. But whether Gulf should have been sued is not the issue. Gulf was sued, and the fact that Gulf may ultimately prevail in the underlying actions insofar as they allege exposure to Gulf's products prior to 1985 does not abrogate ASOMA's duty to defend. *See Starobin v. Randolph Computer Corp.,* 689 F.Supp. 323, 327 (S.D.N.Y.1988) ("It is not necessary that an indemnitee have sustained actual damages in the main action in order to be entitled to enforce an agreement as to indemnification for attorneys' fees.").

By effectively limiting ASOMA's defense-cost indemnity obligation to colorable claims, the district court narrowed the coverage of the indemnity provision in contravention of governing New York law. *See Fitzpatrick v. American Honda Motor Co.,* 78 N.Y.2d 61, 571 N.Y.S.2d 672, 674, 575 N.E.2d 90, 92 (1991) ("the duty to defend is broader than the duty to indemnify" and "an insurer

may be contractually bound to defend even though it may not ultimately be bound to pay"). By the terms of the Stock Purchase Agreement, ASOMA must indemnify Gulf for the cost of *litigating* ultimate liability, like that described in *Starobin* and *Fitzpatrick.*

*2. Texas Law and INA and ISLIC*

Under Texas Law, insurance policies are construed as are contracts generally, and must be interpreted to effectuate the intent of the parties at the time the contracts were formed. *Glover v. National Ins. Underwriters,* 545 S.W.2d 755, 761 (Tex.1977). When the words of a policy are unambiguous, they are to be given their plain, ordinary, and generally accepted meaning, unless the policy clearly indicates that the contractual terms have been used in a different or technical sense. *Puckett v. United States Fire Ins. Co.,* 678 S.W.2d 936, 938 (Tex.1984). However, when the language of a policy is susceptible to more than one construction, the "polic[y] should be construed strictly against the insurer and liberally in favor of the insured." *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 666 (Tex.1987). And where the question of interpretation "involves an exception or limitation on [the insurer's] liability under the policy, an even more stringent construction is required." *Id.*

Under Texas law, an insurer's duty to defend "is determined by the allegations of the petition when considered in light of the policy provisions *without reference to the truth or falsity of such allegations.*" *Argonaut Southwest Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973) (emphasis added). "The duty arises when a third party sues the insured on allegations that, if taken as true, *potentially* state a cause of action within the terms of the policy." *Continental Sav. Ass'n v. United States Fidelity & Guar. Co.,* 762 F.2d 1239, 1243 (5th Cir.) (emphasis in original), *opinion amended on other grounds,* 768 F.2d 89 (5th Cir.1985).

The duty to defend is broader than the duty to indemnify. *Colony Ins. Co. v. H.R.K., Inc.,* 728 S.W.2d 848, 850 (Tex.App.—Dallas 1987, no writ); *see generally* BARRY R. OSTRAGER & THOMAS R. NEWMAN, HANDBOOK ON INSURANCE COVERAGE DISPUTES § 5.02 (5th ed. 1991). As one court teaches:

> In Texas, the duty to defend and duty to indemnify are distinct and separate duties creating distinct and separate causes of action. Texas courts follow the "Eight Corners" or "Complaint

Allegation" rule when determining the duty to defend action.  This rule *requires* the trier of fact to examine *only* the allegations in the [underlying] complaint and the insurance policy in determining whether a duty to defend exists.  *The duty to defend is not affected by facts ascertained before suit, developed in the process of the litigation, or by the ultimate outcome of the suit.*

*American Alliance Ins. Co. v. Frito-Lay, Inc.,* 788 S.W.2d 152, 153-54 (Tex.App.—Dallas 1990, writ dism'd) (emphases added and citations omitted).

*a. INA*

The district court summarily excused INA from its contractual duty to defend after finding that Gulf knew, prior to the effective date of the INA policy, that it had been named as a defendant in *Fowler* and reasonably expected that more *claims* would be asserted against it in that suit.  The court held that Gulf's knowledge invoked the INA policy exclusion for " "bodily injury' or "property damage' expected or intended from the standpoint of the insured."  *See* 765 F.Supp. at 376.

INA contends that the court correctly read its policy, because one cannot insure against liability known at the policy's inception.  INA stresses that both Texas law and public policy require some degree of "fortuity" of loss and "contingency" of risk in insurance.  But INA and the district court erroneously conflate expected *claims* and expected bodily *injury.*  Gulf's liability remains unknown or "contingent" even though it knows that parties will file claims.

Gulf is correct that the relevant question in applying the "expected or intended" exclusion is whether the *bodily injury* which forms the basis for a claim against Gulf's GCL policy is expected or intended by Gulf, not whether the claim itself was expected or intended.  *See Hartford Casualty Co. v. Cruse,* 938 F.2d 601, 604-05 (5t h Cir.1991) (construing a GCL policy similar to INA's under Texas law and holding that the loss was covered under the policy because "an occurrence takes place where *the resulting injury or damage* was unexpected and unintended");  *see also Alert Centre, Inc. v. Alarm Protection Serv., Inc.,* 967 F.2d 161, 164 (5th Cir.1992) (reversing summary judgment in favor of insurer after holding that "expected or intended" injury exclusion only excludes an injury "which the insured intended, not one which the insured caused, however intentional the injury-producing act") (quoting *Breland v. Schilling,* 550 So.2d 609, 611 (La.1989)).

In *City of Johnstown, N.Y. v. Bankers Standard Insurance Co.,* 877 F.2d 1146 (2d Cir.1989),

the Second Circuit considered a similar case, and held an "expected or intended" injury exclusion inapplicable, *even when the insured had reason to expect a claim to be brought against it, id.* at 1151, as long as the insured had neither expected nor intended the underlying injury:

> [W]hat makes injuries or damages expected or intended ... are the knowledge and intent of the insured. It is not enough that an insured was warned that damages might ensue from its actions, or that, once warned, an insured decided to take a calculated risk and proceed as before. Recovery will be barred only if the insured intended the damages, or if it can be said that the damages were, in a broader sense, "intended" by the insured because the insured knew that the damages would flow directly and immediately from its intentional act.

*Id.* at 1150 (citations omitted). No difference between insurance law in New York and Texas renders this reasoning inapplicable here. Moreover, according to the Texas Supreme Court,

> we must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, *even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties['] intent.*

*Barnett,* 723 S.W.2d at 666 (quoting *Glover,* 545 S.W.2d at 761) (emphasis added). Gulf's urged construction—that the "expected or intended" injury clause should only exclude expected or intended *injuries,* and not expected or intended *claims*—is "not itself unreasonable," particularly in light of the fact that INA could have easily learned of the *Fowler* litigation and crafted a specific exclusion for future claims arising from that litigation.[3]

*b. ISLIC*

The district court held that ISLIC need not contribute to Gulf's defense because ISLIC's policy expired before Gulf first shipped molyoxide to Lone Star. This holding contravenes *American Alliance,* which forbids consideration of facts other than those in a complaint to determine whether a duty to defend exists. *See* 788 S.W.2d at 153-54. The *Fowler* plaintiffs base their claims on exposure to Gulf's chemicals from 1946 to 1990. The later-discovered fact that Gulf did not ship molyoxide to Lone Star until January 20, 1986 is irrelevant under *American Alliance.* The district court's judgment presupposes that Gulf *cannot* be held liable, as a matter of law, for what happened to the *Fowler* plaintiffs before January 20, 1986, but this question was not before the district court.

ISLIC counters that *State Farm Fire & Casualty Co. v. Wade,* 827 S.W.2d 448

---

[3]For the same reasons, the "expected or intended" injury clause in Birmingham's policy does not permit Birmingham to escape liability for Gulf's defense costs.

(Tex.App.—Corpus Christi 1992, writ denied) represents an exception to the rule announced in *American Alliance.* *See also Gonzales v. American States Ins. Co.,* 628 S.W.2d 184, 187 (Tex.App.—Corpus Christi 1982); *Cook v. Ohio Cas. Ins. Co.,* 418 S.W.2d 712, 714-15 (Tex.Civ.App.—Texarkana 1967, no writ). But the exception represented by these cases does not help ISLIC; the cases only teach that a court may look outside a complaint to determine *coverage.* Here, the district court looked outside the *Fowler* plaintiffs' claims to determine Gulf's *liability,* and even the authorities cited by ISLIC proscribe this. *Wade,* 827 S.W.2d at 451; *Gonzales,* 628 S.W.2d at 187; *Cook,* 418 S.W.2d at 714-15. It may well be determined in the *Fowler* litigation that no injury (exposure) can be attributed to Gulf prior to January 20, 1986. That determination would end the participation of ISLIC, as well as of ASOMA, in the defense costs. But it is not presently a determination available to this proceeding.

B. THE DISTRICT COURT'S APPORTIONMENT FORMULA

We come to the dispute over apportionment of costs, among seriatim insurers, to defend against tort claims for injuries developed during long-term exposure to toxic products.

Gulf contends that apportionment of defense costs is inappropriate under Texas law, and that each of its insurers are jointly and severally liable for all of its defense costs, and ASOMA is liable for all of its defense costs attributable to conduct before January 18, 1985. Birmingham disagrees with Gulf, but argues that the district court erred by apportioning defense costs without full knowledge of the relevant facts.

*1. The Existence of Apportionment Under Texas Law*

In its seminal decision on defense-cost apportionment, the Sixth Circuit teaches:

An insurer must bear the entire cost of defense when "there is no reasonable means of prorating the costs of defense between the covered and the not-covered items." *Nat'l Steel Construction Co. v. Nat'l Union Fire Ins. Co.,* 14 Wash.App. 573, 543 P.2d 642, 644 (1975). Thus, in the typical situation, suit will be brought as the result of a single accident, but only some of the damages sought will be covered under the insurance policy. In such cases, apportioning defense costs between the insured claim and the uninsured claim is very difficult. As a result, courts impose the full cost of defense on the insurer.

These considerations do not apply where defense costs can be readily apportioned. The duty to defend arises solely under contract. An insurer contracts to pay the entire cost of defending a claim which has arisen within the policy period. The insurer has not contracted to pay defense costs for occurrences which took place outside the policy period. Where the

distinction can be readily made, the insured must pay its fair share for the defense of non-covered risk.

*Insurance Co. of North America v. Forty-Eight Insulations, Inc.,* 633 F.2d 1212, 1224-25 (6th Cir.1980) (footnotes omitted), *clarified,* 657 F.2d 814, 816 (6th Cir.) ("Where costs can be readily apportioned, as here, it is reasonable to have [the insured] pay its fair share of defense costs...."), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686-87, 70 L.Ed.2d 650 (1981). Based on this reasoning, the court held that the costs of defending a series of asbestos suits must be borne proportionally among insurers according to the period of time that they insured against the risk while people were exposed to the asbestos, with apportionment to the insured party itself according to the time that it was without insurance while people were exposed to its asbestos. *Id.*

This court adopted the reasoning of *Forty-Eight Insulations* in *Porter v. American Optical Corporation,* 641 F.2d 1128, 1145 (5th Cir.), *cert. denied,* 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). The *Porter* court held that, under Louisiana law, liability and the cost of defense must be apportioned between the insured's two insurers whose policies were in effect during the period in which the underlying plaintiff was exposed to asbestos. *Id.* More recently, this court considered defense-cost apportionment under Mississippi law in *EEOC v. Southern Publishing Co.,* 894 F.2d 785 (5th Cir.1990), and reaffirmed its approval of *Forty-Eight Insulations. Id.* at 791.

Gulf argues that *Forty-Eight Insulations* and its progeny are inconsistent with Texas law, which interprets contracts like those at issue here to require each insurer whose policy covers any claim in a suit to pay all defense costs in the suit. But in support of this broad statement of Texas law, Gulf only cites *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965), *Enserch Corp. v. Shand Morahan & Co.,* 952 F.2d 1485, 1492 & n. 7 (5th Cir.1992), and *Rhodes v. Chicago Ins. Co.,* 719 F.2d 116, 119 (5th Cir.1983). None of these opinions address latent-injury toxic-exposure claims like those at issue here and in *Forty-Eight Insulations.* They all concern multiple claims arising from a single incident. The *Forty-Eight Insulations* court based its decision on this distinction. *See* 633 F.2d at 1224-25 (citing *National Steel Construction Co.*).

To our knowledge, no Texas court has ruled on whether defense costs are apportionable when a ready basis for apportionment is apparent. In *Porter,* this court followed *Forty-Eight*

*Insulations* to hold that Louisiana courts would apportion defense costs according to exposure time in latent-injury toxic-exposure cases. 641 F.2d at 1145. Notably, both before and after *Porter,* Louisiana courts hold that an insurer must defend all claims that arise from a single incident when the policy covers at least one claim. *See Ellis v. Transcontinental Ins. Co.,* 619 So.2d 1130, 1134 (La.App.1993); *American Auto Ass'n v. Globe Indem. Co.,* 362 So.2d 1206, 1209 (La.App.1978). Thus, *Porter* establishes that cases like *Globe Indem. Co.* do not bar adoption of the Sixth Circuit's reasoning in *Forty-Eight Insulations. Heyden* and similar cases cited by Gulf are no more an impediment to our extension of *Forty-Eight* insulations here than *Gulf Indem. Co.* was to the *Porter* court. We recognize nothing in Texas law that prevents our interpreting the defense-cost indemnity provisions of the policies here at issue to require *pro rata* apportionment of defense costs according to the time that each insurer accepted the risk of exposure to Gulf's chemicals.[4] We thus apply *Porter's pro rata* apportionment holding to Texas.[5]

Though we approve the concept of apportioning the *cost* of an insured's defense among those liable for exposure risk during the period for which claims are made against the insured, we do not limit the *duty* of defending the insured. This duty is owed by each and every insurer whose policy is potentially implicated, and is not diminished by the presence of other insurers or by the fact that the insured was without coverage during part of the relevant period. This duty remains absolute until the insurer proves that its policy covers no remaining claims. *See, e.g., Abex Corp. v. Maryland Casualty Co.,* 790 F.2d 119, 129 (D.C.Cir.1986). By our holding, we simply recognize that, in latent-injury toxic-exposure cases like this one, insurers need not provide separate defenses, but may be compelled by the insured to share in the cost of providing a complete defense. It follows that the insured must

---

[4]Several other federal appellate courts have approved similar *pro rata* apportionment of defense costs. *See Keene Corp. v. Insurance Co. of N. Am.,* 667 F.2d 1034, 1050-52 (D.C.Cir.1981), *cert. denied,* 455 U.S. 1007, 102 S.Ct. 1644-45, 71 L.Ed.2d 875 (1982); *id.* at 1058 (Wald, J., concurring); *Budd Co. v. Travelers Indem. Co.,* 820 F.2d 787, 790-91 (6th Cir.1987); *Okada v. MGIC Indem. Corp.,* 823 F.2d 276, 282 (9th Cir.1986); *see also Enron Corp. v. Lawyers Title Ins. Corp.,* 940 F.2d 307, 311 & n. 6 (8th Cir.1991).

[5]Gulf argues that the Sixth Circuit "flatly rejected" the apportionment rule of *Forty-Eight Insulations* in *Ray Industries, Inc. v. Liberty Mut. Ins. Co.,* 974 F.2d 754 (6th Cir.1992). We do not even read *Ray* to limit *Forty-Eight Insulations,* let alone reject it. Moreover, *Porter,* not *Ray,* represents this circuit's view of *Forty-Eight Insulations.*

bear its share of those costs determined by the fraction of the time of injurious exposure in which it lacked coverage.

## 2. The Proper Apportionment Formula

Birmingham argues on cross-appeal that the district court erred by looking beyond the *Fowler* complaint to determine the relevant exposure period for purposes of defense-cost apportionment. Instead of using the 44-year period alleged in the *Fowler* complaint, the district court considered affidavits and determined that Gulf only shipped molyoxide to Lone Star from January 20, 1986 to January 12, 1988. From these facts, the court reasoned that Gulf could only be liable to the *Fowler* plaintiffs between the first and final shipment dates, and apportioned Gulf's *Fowler* defense costs among Gulf, GenStar, and Birmingham according to the time that each of these parties was responsible for injuries caused by Gulf during this 24-month period. The district court's judgment cannot withstand our holdings concerning the respective defense duties of ASOMA, INA, and ISLIC. Thus, we offer the following guidance for defense-cost apportionment in this case.

Each party's liability for Gulf's defense costs in *Fowler* is limited by each party's contract with Gulf. *See Porter,* 641 F.2d at 1145. Accordingly, the district court must allocate defense-cost liability based upon: 1) who sues Gulf (as opposed to who recovers damages from Gulf); 2) the time period during which plaintiffs allege exposure to molyoxide for which Gulf is liable; and 3) the amount of effort required to defend Gulf against the claims.

The present record does not permit a final determination of these factors.[6] We do not know how long Lone Star employees were exposed to molyoxide after each shipment. We do not know whether any molyoxide produced by ASOMA's Chemical Division remained at Lone Star after Gulf incorporated, but before Gulf first shipped molyoxide to Lone Star on January 20, 1986. We do not know whether the *Fowler* plaintiffs claim that Gulf is liable as a successor entity for any harm done

---

[6]Unlike the district courts in *Forty-Eight Insulations* and *Porter,* which were charged with allocating *both* liability and defense costs among the insured and its insurers, *see* 633 F.2d at 1225 and 641 F.2d at 1145, the district court here only has authority to decide the latter question. Though the parties here may achieve the most efficient resolution of their defense-cost dispute by consolidating it with the *Fowler* litigation, we cannot force them to do this. Still, we urge the district court to fashion its orders in this case to be consistent with any relevant orders from the Texas court in *Fowler.*

by products produced at the Freeport plant before Gulf began operating it.

Until these matters are finally determined, the costs of Gulf's defense from the inception of the *Fowler* litigation are to be borne equally by ASOMA, Birmingham, GenStar, INA, ISLIC, and Gulf itself. Upon motion by any party, that party assuming the burden of proof, the district court may order a final allocation of defense costs once those costs stop accumulating.

C. GULF'S CLAIMS FOR COSTS, FEES, AND BREACH OF GOOD FAITH DUTY

Texas permits an insured party to recover attorney fees and costs after successfully suing an insurer for breach of a policy. *Aetna Fire Underwriters Ins. Co. v. Southwestern Eng'g Co.,* 626 S.W.2d 99, 102-03 (Tex.App.—Beaumont 1981, writ ref'd n.r.e.) (citing TEX.CIV.PRAC. & REM.CODE ANN. § 38.001 (formerly V.T.C.S.A. art. 2226)). Birmingham, GenStar, INA, and ISLIC all owed a contractual duty to defend Gulf in the underlying state action. They are therefore liable for Gulf's costs and attorney fees in this suit to the extent that Gulf had to sue each party to enforce each contract. We leave allocation of those costs and fees among Gulf's insurers to the district court, noting only that GenStar claims to have offered Gulf the defense-cost indemnity that we uphold in this case. Thus, to the extent that Gulf need not have sued GenStar to obtain a time-based *pro rata* share of its defense costs from GenStar, the district court is not to make GenStar pay Gulf's costs and fees.

Gulf also presses a tort claim for each of its insurers' bad faith in refusing to contribute to its defense costs. *See Viles v. Security Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex.1990). To sustain a claim for breach of an insurer's duty of good faith and fair dealing, the insured must establish: 1) the absence of a reasonable basis for denying or delaying payment of the claim; and 2) that the insurer knew, or should have known, that no reasonable basis for denying or delaying payment of the claim existed. *Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988). Gulf's claims against Birmingham, GenStar, INA, and ISLIC for breach of their respective duties of good faith and fair dealing are to be decided by the district court on remand.

III. CONCLUSION

The district court is to follow these instructions on remand:

1. ASOMA, Birmingham, GenStar, INA, and ISLIC owe Gulf and Cheminter the duty to defend Gulf in the *Fowler* litigation. The parties do not dispute Gulf's choice of counsel, though the district court discussed this point in May 1991, and that choice is affirmed. ASOMA, Birmingham, GenStar, INA, and ISLIC shall each contribute one-sixth of the cost of Gulf's defense in the *Fowler* litigation, past, present, and future, on an interim basis. The district court may adjust these interim contributions based upon application of the rulings made in this opinion.

2. When events permit a final allocation of defense costs, that allocation, superseding the interim apportionment fashioned above, shall be assessed as follows:

    a. ASOMA shall be fully liable for that portion of defense costs attributable to Gulf's defense against claims for injuries arising from the conduct of Gulf, ASOMA's Chemical Division, or ASOMA prior to January 18, 1985;

    b. For defense against those claims for injuries arising out of Gulf's conduct between January 17, 1985 and June 1, 1989, Birmingham, GenStar, INA, and ISLIC shall each be responsible for a fraction of Gulf's defense cost calculated by dividing the period of policy coverage of each by the period of total exposure *after* January 17, 1985 for which Gulf is liable;

    c. The district court may adjust each insurer's share to account for: 1) variations in the number of *Fowler* plaintiffs whose claims implicate a particular policy period; or 2) variations in the amount of effort required to defend Gulf against different claims for exposure at different times.

3. If the state court where the *Fowler* litigation is being tried makes rulings pertinent to the decisions made or to be made in the present federal action, the district court shall attempt to make its orders consistent therewith.

4. The district court will decide on remand how to apportion Gulf's court costs among ASOMA, Birmingham, GenStar, INA, and ISLIC, and how to apportion Gulf's reasonable attorney fees for prosecuting this action among Birmingham, GenStar, INA, and ISLIC.

5. The district court will decide on remand the merits of Gulf's claims against Birmingham, GenStar, INA, and ISLIC for breach of their respective duties of good faith and fair dealing.

    VACATED and REMANDED.