Day, J.
 

 The basic question involved in both cases is whether an insured, afflicted with duodenal ulcer' and unable to pursue his regular vocation or employment, is totally and permanently disabled within the terms of a policy of insurance which contains a provision for the payment of disability benefits in case
 
 *486
 
 the insured should “become totally and permanently disabled” in such manner that he “will for lifetime be unable to perform any work or engage in any business for compensation or profit.”
 

 Determination of this question depends upon the further question as to what construction shall be placed upon the language, ’“totally and permanently disabled and will for lifetime be unable to perform any work or engage in any business for compensation or profit. ’ ’
 

 Defendant argues for a literal and plaintiff argues for a liberal construction.
 

 In case of doubt, provisions for the payment of total and permanent disability benefits must be liberally and fairly construed'in order to give effect to, rather than frustrate, the true intent of the contracting parties. It is generally held that insurance policies should be given a liberal construction in favor of the insured. To construe the language “totally and permanently disabled * * * to perform any work or engage in any business for compensation or profit” literally is to say that to entitle an insured to disability benefits he must have become so utterly helpless as to be incapable of performing work of any kind for remuneration or profit. Such could not have been the intention of the contracting parties. Counsel for defendant deny such intention when they say in their brief: “It is not our contention that a person need necessarily be bedridden in order to recover under the policy sued upon. The mere fact that insured might be able to sell shoe strings or pencils on the street corner would not necessarily disqualify him from receiving benefits.” In other words, defendant, in effect, concedes that the language is not to be strictly construed. Although so conceding, defendant nevertheless argues that: “Under the court’s charge, the insured, even though he could earn substantial sums of money at an occupation or business other than his own, would be considered
 
 *487
 
 totally disabled. ’ ’ The argument, in effect, is that although. the insured be totally incapacitated from performing the work for which he is qualified, he is not to be deemed totally disabled from doing work for which he is not qualified. The parties to the contract of insurance must be held to have contemplated a total disability to perform any work for compensation or engage in any business for profit for which the insured was qualified. Such was, in substance and effect, the charge to the jury in both cases.
 

 For what was plaintiff qualified? The record discloses that plaintiff commenced to work for the American Steel
 
 &
 
 Wire Company at the age of twelve, and continued working for that company for a period of 48 years. The highest position he attained with the company was that of night roll superintendent, at a wage of $383 per month. His duties included adjusting rolls, changing rolls and looking after the mills in general. His work brought him to places of varying degrees of temperature, ranging anywhere from zero to 200° or 210° F. His work required him to handle heavy wrenches and hammers in connection with his duties of adjusting or changing rolls. For this work he was qualified through his years of experience. On April 6, 1933, at the age of 59, he was seriously stricken with ulcers and suffered a severe hemorrhage. He was taken to.the hospital where he spent a number of weeks and was thereafter confined to his bed at home for a number of months. As a result of his illness, his weight dropped from 185 pounds to about 160 pounds. He went back to work as a watchman and worked for three or four weeks. Although his only duty at this new type of work consisted in seeing that the lights “were lit in the yard and at the gates, he was compelled to abandon even this light work for the reason that he fatigued easily and was unable to walk about in connection with his work. He has not been able to resume work since, so the record discloses.
 
 *488
 
 He is no longer able to perform tbe work for which be was qualified. He is totally disabled,, from performing tbe work for which be was qualified, and tbe jury so found.
 

 Is plaintiff’s disability permanent within tbe meaning of the policy? Defendant offered medical testimony of Doctor Biskind, who examined plaintiff at its request. Tbe doctor testified:
 

 “Q. Now, doctor, may a patient have such a hemorrhage and be temporarily totally disabled and then recover and be able to engage in many forms of work or labor for compensation or profit? A. Yes, sir.”
 

 Doctor Biskind examined tbe plaintiff in June of 1935, at bis office, and testified:
 

 “Q. * * * "When did you examine him? A. I examined him at tbe time of tbe first visit to my office.
 

 “Q. And that was in June, 1935? A. Bight, sir.
 

 “Q. And what did you find? A. -On the basis of bis history and physical examination, I felt the man was suffering from a chronic duodenal ulcer.
 

 “Q. And what did you find as to bis disability? * * * [Objection overruled].
 

 “Q. Go ahead, doctor. A. I felt at that time, in view of tbe history that be bad given me of a recent hemorrhage, that be was' disabled but I did not feel this disability would be permanent.
 

 “Q. Did you find be was temporarily disabled? A. Yes, sir.”
 

 In cause No. 27164, tbe testimony was substantially to tbe same effect. Plaintiff testified that since tbe institution of tbe previous suit be had again suffered hemorrhages from the ulcer, one in December, 1936, and one in or about September, 1937; and that be is unable to work.
 

 Doctor Beams, who examined plaintiff about one week before the trial, at the request of defendant, testified:
 

 “Q. And, doctor, from your examination of tbe
 
 *489
 
 plaintiff, have you an opinion as a physician? A. I have.
 

 “Q. "Whether or not from a medical point of view he is physically able to do various forms of work? A. I have.
 

 “Q. Or for wage or profit? A. I have.
 

 “Q. "What is your opinion? A. I think he is.able to work.”
 

 The general context of Doctor Beam’s testimony was to the effect that while disability results from such hemorrhages, the patient can resume work when the hemorrhages are ended, and that the disability in all instances is temporary.
 

 The words “permanent disability,” like the words “total disability,” are not to be literally construed. Literal construction would foreclose any action on a policy until after death. In no other way could permanence of disability be literally determined. It is our opinion that disability need not' continue until death in order to be regarded as permanent. See 7 Couch on Insurance, 5782, Section 1672. Nor are the words “permanent disability” and “total disability” to be construed apart from the rest of the provisions of the policy. On the contrary, they must be read in connection with all related provisions contained in the policy. In no other manner can the true intent and meaning of the words be reasonably determined.
 

 Contained in the policy is' a provision which reads:
 

 “Notwithstanding proof of disability may have been accepted by the company as satisfactory, the insured shall at any time, but not oftener than once a year, on demand from the company, furnish due proof of the continuance of such disability and permit examination by a medical examiner of the company; and if the insured shall fail to furnish such proof, or if the insured is able to perform any work or engage in any business whatsoever for compensation or profit, no further premiums will be waived or allowed to accumulate as an
 
 *490
 
 indebtedness against the policy, nor will any further monthly annuity payments be made. ’ ’
 

 This provision recognizes that for a disability to be permanent it need not necessarily be lifelong. The term “such” in the provision that “the insured shall at any time * * * on demand from the company, furnish due proof of the
 
 continuance
 
 of
 
 such
 
 disability,” clearly refers to total and permanent disability. (Italics ours.) The quoted provision clearly modifies the previous provision of the policy, dealing with total and permanent disability. It evidences an intention of the parties that the language “totally and permanently disabled and will for lifetime be unable to perform,” shall not be taken literally, and that a disability for a duration less than life may be treated, for the purpose of the policy, as permanent.
 

 We sustain the view of the Court of Appeals that it was not error for the trial court to refuse to charge in the language of only one of the provisions of the policy.
 

 We are of the opinion that substantial justice was done in both cases, and that no prejudicial error in the charges' intervened.
 

 Judgments affirmed.
 

 Weygandt, C. J., Zimmerman, Williams, Myers, Matthias and Hart, JJ., concur.