Stewabt, J.
The question with which we are confronted is whether plaintiff, within 20 days after the date of his accident, was wholly and continuously disabled and prevented from performing every duty pertaining to his occupation for a period of 52 consecutive weeks. If he was, then the judgment of the Court of Appeals is correct. If he was not, then that judgment is erroneous, and defendant’s motion for judgment notwithstanding the verdict should have been sustained.
The evidence is undisputed that plaintiff received his indemnity payments from the date he stopped work after his accident until he returned to work, and that, since his first return entailed only about a week of employment, defendant made no *77 claim that his total disability had ceased and paid him in full from the time of his second stopping of work until July 9, 1950, when he again returned to his employment.
Did his continuous employment from July 9, 1950, until September 25, 1951, stop the running of defendant’s obligation to pay weekly indemnity accident benefits and make defendant’s obligation one to pay only sick benefits ?
That question entails an interpretation and construction of the clause in the policy quoted in the statement of facts.
Three months of the period of plaintiff’s 14 months employment was within the period of 52 weeks from the date of his accident.
During those 14 months was plaintiff wholly and continuously disabled and prevented from performing every duty pertaining to his occupation?
It must be conceded for the purposes of our decision that plaintiff did have help in lifting pans of cones on to racks, and that occasionally fellow workmen helped him to increase his output of ground cones, which increased his pay, but it is also conceded that plaintiff himself worked for at least six to six and one-half hours every day, and that he did a considerable amount of overtime work.
In answer to interrogatories, the jury, which found for plaintiff, said that the average number of hours per day worked by plaintiff at Timken, during the period of July 10, 1950, to September 25, 1951, was at least six and one-half, nine of the jurors giving that answer, one juror giving the answer, seven to eight hours, and two jurors answering, eight hours.
In answer to an interrogatory as to whether plaintiff performed a substantial amount of work at his grinding machine at Timken from July 10, 1950, to September 25, 1951, the jury unanimously answered “yes.” Likewise, the jury unanimously answered “yes” to the question as to whether plaintiff received substantial wage benefits for each biweekly period from July 10, 1950, to September 25, 1951. The jury likewise unanimously answered “yes” to the question, did plaintiff work at his grinding machine each working day with the exception of a few days now and then from July 10, 1950, to September 25, 1951?
It is true that the jury answered, with nine yesses and *78 three noes, that from within 20 days after October 19, 1949, to the present time, plaintiff was wholly and continuously disabled and prevented from performing every duty pertaining to his occupation.
However, the question before us is whether that question should have been submitted to the jury.
The courts below were of the opinion that the clause in the policy with which we are concerned is ambiguous and that, since an insurance policy must be liberally construed in favor of the insured, and, in case of ambiguity, such ambiguity must be resolved against the insurer, a jury question was presented in the interpretation of the clause.
We are in entire agreement with the principles of law enunciated below.
It is too well settled to require supporting authority that, since the insurer prepares the policy of insurance, it must be liberally construed in favor of the insured, and, likewise, if there is a real ambiguity that ambiguity must be construed in favor of the insured. However, a policy is a written contract, and its terms must be given a reasonable construction. An ambiguity which is created by giving a strained or unnatural meaning to phrases or by mere casuistry does not constitute an ambiguity at all.
There are few expressions in use which can not be given a twisted meaning from what the expressions mean in their usual and ordinary sense.
In order to continue to receive his weekly indemnity payments plaintiff must have been wholly and continuously disabled and prevented from performing every duty pertaining to his occupation during the period from July 10, 1950, to September 25, 1951.
It seems to us that the plain and simple meaning of “wholly and continuously disable the insured and prevent him from performing every duty pertaining to his occupation” is entire disability and prevention from performing each one of the duties pertaining to the occupation; and that to twist that phrase into meaning that he is wholly and continuously disabled, if there is any single part of his duty that he can perform, is to engage in pure sophistry. The phrase does not say, “wholly and continuously disable the insured so as to prevent him from per *79 forming every duty pertaining to Ms occupation, ” but it does say, “wholly and continuously disable the insured and prevent him from performing every duty pertaining to Ms occupation, ’ ’ that is to say, in order not to have his weekly indemnity cease he must be both wholly and continuously disabled and prevented from performing every duty pertaining to Ms occupation.
If a person is working at his job for an average of six and one-half hours every worldng day for more than 14 months, even though he receives some lifting help from fellow workers, which is not against the rules of the employer, is working considerable overtime during that period and is earning and receiving, not as a salary or hourly wage but by piecework payment, an average of $75 weekly every bimonthly payday, it seems fantastic to say that that person is wholly and continuously disabled and prevented from performing every duty pertaining to his occupation.
As to the rule of reason in the construction of clauses in in-' surance policies, we refer to Groves v. World Ins. Co., 160 Ohio St., 355, 116 N. E. (2d), 204; Provident Life & Accident Ins. Co. v. Bertman, 151 F. (2d), 1001; Hasson v. Mutual Benefit Health & Accident Assn., 309 Mich., 331, 15 N. W. (2d), 659.
Plaintiff and the court below relied upon the cases of Gibbons v. Metropolitan Life Ins. Co., 135 Ohio St., 481, 21 N. E. (2d), 588, and Stuhlbarg v. Metropolitan Life Ins. Co., 143 Ohio St., 390, 55 N. E. (2d), 640.
It is true that in both those cases this court said that an insurance policy should be given a liberal construction in favor of the insured, and where the language is ambiguous it will be strictly construed against the insurer and that construction adopted which is more favorable to the insured.
As we have said, the doctrine there enunciated is so um-versally accepted that it needs no authority to support it. However, a careful reading of the Gibbons and Stuhlbarg cases will demonstrate that policies quite different from the one in the present case were involved, and that the decisions therein have no application to the question with which we are confronted.
It is true that in the Stuhlbarg case there was some question as to whether an insane man who was being paid $50 a week was totally disabled. However, the $50 was being paid by his two brothers out of their own pockets instead of out of the business, *80 and as a result of a recommendation by the insured’s physician that this would have a beneficial therapeutic effect. There was no question that that payment was not in the way of earnings but constituted a pure charity.
Doubtless if a person is totally disabled and, through the charity or beneficence of his employer or others, is kept on a salary, even though totally disabled, the insurer can not successfully contend against total disability because of such payment.
However, that question is not in this case.
As we have said, plaintiff was on neither a salary nor an hourly wage, and he could only earn according to the number of cones which he ground.
Much is made of the fact that plaintiff suffered practically continuous pain during the time he was working, but that of itself does not constitute whole and continuous disability. It is a matter of common knowledge that a large number of people suffer almost continuous pain while they are working at their professions, businesses and occupations, and, although that is a situation which evokes both admiration and sympathy, one can not say that it is a situation in which whole and continuous disability occurs.
We must remember that we are not measuring damages in a personal injury suit, or a claim under the Workmen’s Compensation Act, but we are construing a contract, and that under the undisputed and conceded evidence in this case plaintiff was not wholly and continuously disabled and prevented from performing every duty pertaining to his occupation during the time he was at work for the more than 14 months from July 10, 1950, to September 25, 1951.
For the reasons stated, the Common Pleas Court was in error in refusing to grant defendant’s motion for judgment notwithstanding the verdict, and the Court of Appeals was in error in affirming the judgment of the Court of Common Pleas.
The judgment of the Court of Appeals is reversed, and final judgment is entered in favor of defendant.

Judgment reversed.

WeygaNdt, C. J., Matthias, Hast, ZimmermaN, Bell and Taft, JJ., concur.