: MYERS, APPELLANT, *v.* TRAVELERS INS. CO., APPELLEE.

(No. 40708—Decided April 17, 1968.)

*Messrs. Kaplan, Kaplan & Lehman* and *Mr. Robert Z. Kaplan,* for appellant.

*Messrs. Eastman, Stichter, Smith & Bergman* and *Mr. William Connelly,* for appellee.

ZIMMERMAN, J. By the terms of the group policy plaintiff may recover thereunder only if "he has become wholly disabled by bodily injuries or disease, and will be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit * * *."

78

Section 3923.011, Revised Code, contains the following statement and definition:

"As used in any policy of sickness and accident insurance delivered, issued for delivery, or used in this state, unless otherwise provided in the policy or in an indorsement thereon or in a rider attached thereto:

"(A)'Total disability' means inability to perform the duties of any gainful occupation for which the insured is reasonably fitted by training, experience, and accomplishment."

In his deposition plaintiff admitted that he was engaged as a traveling salesman by another employer but at considerably reduced remuneration from that which he had formerly received, and that he had been so regularly engaged for a period of four months preceding the taking of the deposition. He also stated that he had requested different and lighter work from his former employer (the one which carried the group insurance policy) but was informed that there was no such work available. He also stated that his doctor had advised him that he could engage in light work which required no strenuous physical exertion.

In the case of *Stuhlbarg* v. *Metropolitan Life Ins. Co.,* 143 Ohio St. 390, 55 N. E. 2d 640, this court held in the fourth paragraph of the syllabus:

"Under the terms of a disability insurance policy providing compensation in case of total disability, the test of the insured's ability to perform any labor for compensation is not limited strictly to the occupation or vocation in which the insured may be engaged at the time his disability accrued, but extends to any comparable employment for which the insured is fitted by education, experience and physical condition."

And, in 45 Corpus Juris Secundum 1174, Section 980, it is stated:

"* * * Disability is total if insured cannot perform any substantial part of the labor required in following some remunerative occupation."

Another approved definition is that one is totally dis-

abled when he cannot earn wages or remuneration in some occupation or gainful pursuit within his capacity and which reasonably can be demanded of him.

All the court properly had before it on the summary judgment hearing were the pleadings and plaintiff's deposition. Section 2311.041 (128 Ohio Laws 63), pertaining to summary judgments and in effect when this action was filed, made no provision for the introduction of testimony. For the text of Section 2311.041, Revised Code, see *Priester v. State Foundry Co.*, 172 Ohio St. 28, 30, 173 N. E. 2d 136.

Plaintiff's own testimony in his deposition refuted his claim of "wholly disabled," and the court was thereby left no alternative but to reject the total disability claim.

Upon the pleadings and plaintiff's deposition, under the terms of the group policy and the definition of "total disability," as contained in Section 3923.011, Revised Code, and under the applicable law, no material issue of fact was presented, and the court properly sustained defendant's motion for summary judgment. It may be that plaintiff could have produced by affidavit, deposition or otherwise material which would have raised an issue of fact and would have entitled him to a formal trial, but he did not, and his failure to do so warranted the summary judgment against him.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

TAFT, C. J., MATTHIAS, O'NEILL, SCHNEIDER and BROWN, JJ., concur.

HERBERT, J., dissents.

MATTHIAS, J., concurring. Although I concur in the majority opinion I am inclined to believe that a meritorious claim was denied here because certain evidence on behalf of the plaintiff was improperly proffered as testimony instead of being submitted in affidavit or deposition form as Section 2311.041, Revised Code (the summary judgment statute), *clearly required at the time of the filing*

*of this action.* It is unfortunate, indeed, to think that where the summary judgment statute dictated so clearly as to how a party was to present his cause, the mandate of that statute was not complied with and the cause lost for that reason only.

O'NEILL, J., concurs in the foregoing concurring opinion.

HERBERT, J., dissenting. The basic question in a summary judgment proceeding is to determine if the documentary evidence submitted to the court raises a genuine issue of fact.

The case at bar presents an additional question: Did the trial court commit prejudicial error when it refused to permit plaintiff to proffer certain evidence during an argument on the motion, some weeks prior to the decision?

I will briefly outline the facts, independent of those pertaining to the claimed error. (These will be discussed later.)

The plaintiff, Myers, had an excellent work record since leaving high school. After his discharge from the military service at the end of World War II he entered employment in the milk distributing industry. In 1945, he was employed by Sealtest. He was promoted after several years to a position in the wholesale distribution of milk department. He earned commissions extending from $250 to over $300 a week.

In the winters of 1961, 1962 and 1963, he suffered attacks of virus pneumonia and lung congestion. He was laid off about six weeks during each of those years under medical care.

In June 1963, he suffered severe pains in his chest and right arm. The tests and cardiograms disclosed that he was suffering from a heart "coronary." He was told to discontinue his work which required considerable lifting and further told not to engage in any work for some time and then only where there was but slight exertion. He was under the care of physicians who prescribed certain medi-

cation including nitrogylcerin capsules. In his deposition on December 2, 1965, he said that:

"I take a hundred and seventy milligrams (nitroglycerin) daily; I'll have to take that for the rest of my life."

On one occasion, he "passed out" in church and was removed to a hospital. The pains in his chest and right arm became severe to the extent that it disturbed him in his sleep and at times he would sit up on the side of his bed to relieve the pain. The nitroglycerin tended to relieve that pain. He was suffering from this heart pain while undergoing cross-examination in his deposition on December 2, 1965.

However, he tried to find work that he could do, even the simplest of tasks. He tried to sell pillows, beds, simple household wares, potato chips, insurance, etc., but was refused in most instances and in others he could not do the work. His heart condition was the major obstacle because when a prospective employer learned that he was suffering from a coronary heart ailment he was immediately turned down.

He registered with the Ohio State Unemployment Service but with no success.

Section 2311.041 of the Revised Code provides that before a summary judgment may be entered for a defendant it must appear "* * * that reasonable minds can come to but one conclusion and that conclusion is adverse * * *" to the disabled plaintiff. The statute provides further that the evidence be "construed most strongly in favor of his [plaintiff's] favor."

I believe that reasonable minds, construing the evidence most strongly in favor of the plaintiff, would decide that there was a question of fact presented whether plaintiff was able to engage indefinitely in any employment for which he was fitted by training and experience.

Coming on now to consider the question of error in respect to the refusal by the court of a proffer of testimony, the record discloses that on May 27, 1966, the court convened to hear arguments of counsel. The following is from the record:

"Mr. Kaplan [plaintiff's counsel] : I would like to offer testimony from my client, Mr. Robert Myers.

"* * * [Opposing counsel] : I will object, Your Honor.

"* * *

"The Court: Let the record show that the motion is predicated on testimony given at a deposition by the plaintiff before, and the statute provides that all evidence to be presented on the motion for summary judgment should be in writing or prescribed form, and it does not contemplate taking oral testimony at the hearing. So therefore I will sustain the objection to plaintiff's testimony.

"Mr. Kaplan: The record should show that if plaintiff were permitted to testify he would testify that he continues to be totally disabled as alleged in the petition.

"The Court: Would his testimony also show that he is presently employed as the deposition shows?

"Mr. Kaplan: No. He is not employed * * *."

It should be noted that the court then and there determined to, and later did, decide the motion for summary judgment without granting leave to plaintiff to put in evidence in the form of a deposition testimony to support the undisputed statement of counsel in open court that the plaintiff was not employed and was not able to work and was totally disabled.

A deposition is merely the record of oral testimony. Without testimony there cannot possibly be any deposition. The majority concedes this when it says in the opinion: "Plaintiff's own testimony *in his deposition*" on December 2, 1965. Had the court permitted the plaintiff to testify then the court would have known how such testimony was to be used. Had the proffer been permitted, an official court stenographer would have taken the testimony and pursuant to statute it would probably have been transcribed in the form of a deposition and then become a matter for the court's consideration. But the court denied this proffer.

The statute, Section 2311.041 of the Revised Code, confers upon the trial court broad authority to do justice in the matter of summary judgment proceedings. The statute

provides, after certain contingencies are discussed that the court may make certain orders "or *may make such orders as are just.*" (Emphasis added.)

On June 9, 1966, the court sustained defendant's motion for summary judgment.

The majority relies upon the case of *Stuhlbarg* v. *Metropolitan Life Ins. Co.,* 143 Ohio St. 390. That appears to be excellent authority supporting the position of the plaintiff. The third paragraph of the syllabus reads:

"The term 'permanent disability,' as used in a disability insurance policy providing for payments to one who 'has become totally and permanently disabled so as to be unable at any time to perform any work or engage in any business for compensation or profit,' *does not mean that such disability must necessarily continue for the remainder of the life of the insured, but that it shall, with reasonable probability, continue for some indefinite period of time without any present indication of recovery therefrom.*" (Emphasis added.)

The evidence is undisputed that the serious heart affliction of the plaintiff is permanent and that he will be taking heavy dosages of nitroglycerin capsules for the rest of his life.

The fourth paragraph of the syllabus in *Stuhlbarg* reads:

"* * * the test of the insured's ability to perform any labor for compensation is not limited strictly to the occupation or vocation in which the insured may be engaged at the time his disability accrued, *but extends to any comparable employment for which the insured is fitted by education, experience and physical condition.*" (Emphasis added.)

The opinion in *Stuhlbarg* was written by the late Judge Hart, an able jurist. At page 398 of the opinion, Judge Hart said:

"The testimony adduced at the trial was to the effect that plaintiff's disability existed at the time of trial and that it would probably continue, at least, indefinitely. This is sufficient proof to go to the jury on the question of per-

manency. *Gibbons* v. *Metropolitan Life Ins. Co.,* 135 Ohio St. 481, 21 N. E. 2d 588. See, also, *Equitable Life Ins. Co. of Iowa* v. *Gerwick,* 50 Ohio App. 277, 197 N. E. 923; *Mutual Life Ins. Co. of N. Y.* v. *Wheatley,* 243 Ky. 69, 47 S. W. 2d 961.''

The evidence is undisputed. For 18 years the defendant received premium payments on an insurance policy covering a contingency of total disability. The plaintiff has a record of industry and tireless effort. At the age of 54, for three successive winters, he suffered severe virus pneumonia attacks and lung congestion which required a lay-off of about six weeks in each year. Then there followed attacks in his chest and arm of excruciating and continued pain. Tests disclosed that he was a victim of a heart ''coronary.'' He was required to take heavy dosages of nitroglycerin capsules and other medication for relief and to compensate for his heart deficiency. He suffered severe pain day and night.

In his desire to work he tried practically every possible employment that he could do but was turned away. The only instance where he was able to find work was in the menial task of selling salt and pepper shakers on a drawing account. He could not even endure that work and after about four months was required to give it up. In short, the record shows that for years he has been unable to engage in any employment. He is totally and permanently disabled. That is not disputed. The trial court would not permit him the full protection of Section 3923.011 of the Revised Code.

The judgment of the Court of Appeals, affirming the judgment of the trial court should be reversed.