DAVIS, Appellant,

v.

CLASSIC LIFE ASSURANCE COMPANY, Appellee.

[Cite as *Davis v. Classic Life Assur. Co.* (1996), 114 Ohio App.3d 688.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70677.

Decided Oct. 24, 1996.

*Michael A. Robusto* and *UAW Ford Legal Services Plan*, for appellant.

*Baker & Hostetler, Michael D. Dortch* and *William B. Shearer*, for appellee.

*Per Curiam.*

This cause came on for hearing upon the accelerated calendar of our court pursuant to App.R. 11.1 and Loc.R. 25, which allow for statements of the reasons for our decision to be in brief and conclusory form.

Eric Davis appeals the common pleas court judgment granting summary judgment in favor of Classic Life Assurance Company on his claim for benefits under a disability insurance policy.

On March 31, 1988, Davis, a Ford Motor Company employee, purchased a 1988 Ford Mustang at Mullinax East, Inc. As part of this transaction, Davis also purchased credit disability insurance through Classic, whereby Classic agreed to pay the monthly payments due on the vehicle if Davis became totally disabled.

Thereafter, on June 15, 1988, Davis was involved in a car accident and became totally disabled. In October 1988, he filed a claim with Classic, and in accordance with the terms of the disability insurance policy, Classic began to pay Davis's $350.85 car payment in October 1988 and continued to make these payments regularly until May 1990. Classic did not pay benefits for the period from June 1990 to November 1991, when Davis returned to work at Ford, because Classic determined that Davis no longer qualified as "totally disabled" under the policy.

Davis sued Classic, seeking damages for the eighteen payments Classic refused to make during the June 1990 to November 1991 period. Classic filed a motion for summary judgment, which the trial court granted, and Davis now appeals, assigning the following as error for our review:

"The trial court erred by granting defendant's motion for summary judgment when it did not appear from the evidence that reasonable minds could come to

but one conclusion, and that conclusion is adverse to the plaintiff, such plaintiff being entitled to have the evidence construed most strongly in his favor."

Davis contends that the trial court erred in granting summary judgment in favor of Classic because from June 1990 to November 1991, he suffered total disability as defined in the contract. Furthermore, Davis argues that he complied with the contract provisions requiring him to provide written proof of his continuing disability.

Classic argues, on the other hand, that the trial court properly granted summary judgment in this case because the plain language of the contract precluded Davis from receiving benefits, and also because Davis did not file continuing disability reports and, therefore, did not satisfy a condition precedent of the contract.

The issue, then, for our consideration is whether the trial court properly granted summary judgment in favor of Classic.

Civ.R. 56 governs summary judgments and in *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379–1380, the Ohio Supreme Court explained the rule's requirements:

"Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party against whom the motion for summary judgment is made." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

With this standard in mind, we consider the disability insurance contract between Davis and Classic. In considering this contract we recognize that it is well established that construction of a written contract is a matter of law to be determined by the court. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. Accordingly, when the terms of a contract are clear and unambiguous a court "cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties." *Id.* at 246, 7 O.O.3d at 406, 374 N.E.2d at 150; *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393; *Fid. & Cas. Co. v. Hartzell Bros. Co.* (1924), 109 Ohio St. 566, 143 N.E. 137.

█ We further recognize that the Ohio Supreme Court addressed the issue of qualification for disability insurance benefits in *Gibbons v. Metro. Life Ins. Co.*

(1939), 135 Ohio St. 481, 14 O.O. 387, 21 N.E.2d 588, and held in paragraph two of its syllabus:

"An insured, afflicted with duodenal ulcer and unable by reason thereof to pursue his regular vocation or employment, is 'totally and permanently disabled' within the terms of a policy of insurance which contains a provision for the payment of disability benefits in case the insured should 'become totally and permanently disabled' in such manner that he 'will for lifetime be unable to perform any work or engage in any business for compensation or profit.'"

In *Gibbons*, the court considered the meaning of the "totally disabled" provision and concluded the claimant eligible for benefits when he could not return to his former job, which he had held his entire working life, stating:

"To construe the language 'totally and permanently disabled * * * to perform any work or engage in any business for compensation or profit' literally is to say that to entitle an insured to disability benefits he must have become so utterly helpless as to be incapable of performing work of any kind for remuneration or profit. Such could not have been the intention of the contracting parties." *Id.* at 486, 14 O.O. at 390, 21 N.E.2d at 591.

In this case, eligibility for payment under the Classic policy provides:

" * * * If you are insured for total disability insurance, we will pay a benefit if you file written proof that you became totally disabled while insured and continue to be totally disabled for more than the waiting period marked in the Schedule. * * * Payments will stop when you are not totally disabled any more or when benefits are paid to the end of the Term of Insurance, whichever comes first."

Furthermore, the Classic definition of "total disability" is strikingly similar to the definition in *Gibbons, supra,* and defines the term as follows:

"Total disability means that you are not able to perform the duties of any occupation for wage or profit to which you are reasonably qualified by education, training or experience because of sickness or accidental injury, for which you require and receive regular treatment from a licensed physician other than yourself."

The record in this case contains a disability report from Davis's physician in January 1990, which diagnosed Davis as totally disabled, but in part of the report the physician stated, "Patient can return to work with a thirty-five pound weight restriction but it is not available at this time." Davis's physician filed another report in May 1990, again diagnosing him as totally disabled until July 15, 1990, and Davis added to that report that he would return to work when Ford found him a job meeting his physical limitations.

Based on the thirty-five-pound-weight restriction contained in the January 1990 medical report, Classic sent Davis a letter in May 1990, advising him that his

condition did not constitute total disability under the policy because he could obtain other employment elsewhere which did not require the ability to lift thirty-five pounds, and that his decision to wait until Ford found him an appropriate job did not obligate Classic to continue to pay his benefits. Therefore, Classic stopped making payments after the May 1990 payment. Davis, then, appealed to Classic by letter, explaining that he had been trained to work at Ford and spent almost his entire adult life working there, and that for financial reasons he had wanted to stay with Ford rather than leave to take a minimum wage job.

The record further reveals that Davis received a high school education and then held food service jobs at or near minimum wage for a few years before being hired by Ford Motor Company in 1969. Davis worked at Ford for nineteen years until he became disabled in October 1988, and then returned there to work in November 1991.

In conformity with *Gibbons, supra*, we conclude that Davis was totally disabled under the terms of his disability policy with Classic for the period from June 1990 until November 1991 because the parties could not have intended that to entitle him to benefits he must have been so helpless as to be unable to perform work of any kind and it is patently unreasonable to expect a twenty-year career employee to seek new employment during a period of documented physical disability while under a physician's care.

We have further considered the issue of whether Davis failed to comply with policy requirements to file regular medical disability reports. The policy provides that the claimant "will be required to give [Classic] written proof of your continuing disability from time to time." We note that the policy provides no specifics about filing reports. We also recognize that Davis sent medical reports to Classic consistently from October 1988 through May 1990. Furthermore, the last disability report filed by Davis contained information from his physician that Davis would be totally disabled until July 15, 1990. Thus, we conclude as a matter of law that Davis complied with the contract in providing proof of his disability until the time Classic ceased making its payments in June 1990.

Therefore, while there are no genuine issues of material fact in this case, pursuant to the authority of *Gibbons, supra*, Classic was not entitled to judgment as a matter of law. Accordingly, the trial court erred in granting summary judgment in favor of Classic, and the assignment of error is sustained. The judgment of the trial court is reversed, and the cause is remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

PORTER, P.J., PATTON and O'DONNELL, JJ., concur.