Geraldine OFFILL, fka
Gillispie, Plaintiff,

v.

PENNSYLVANIA LIFE INSURANCE
COMPANY, Defendant.

No. 3:04cv411.

United States District Court,
S.D. Ohio,
Western Division.

July 6, 2007.

Richard Reiling, Esq., Loveland, OH, for Plaintiff.

Elizabeth Conkin, John James Williams, Gonzalez Saggio & Harlan LLP, Cincinnati, OH, for Defendant.

DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR LEAVE TO FILE COUNTERCLAIM (DOC. # 12), OVERRULING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 13), AND OVERRULING DEFENDANT'S MOTION FOR DISMISSAL FOR FAILURE TO COMPLY WITH THIS COURT'S ORDERS (DOC. # 20); CONFERENCE CALL SET

RICE, District Judge.

On or about February 1, 2000, Plaintiff Geraldine Offill (fka Geraldine Gillispie) ("Offill") entered into a contract with Defendant Pennsylvania Life Insurance Company ("PennLife") for the provision of disability insurance. Doc. # 1, Ex. A (Compl.) ¶ 3. Under the terms of the contract ("insurance policy" or "policy"), PennLife agreed to provide Offill certain benefits, in the event of her "total disability." *Id.* (Policy) at 6, 9. On February 24, 2000, Offill was injured in an accident at her place of employment. Doc. # 14 (Offill Dep.) at 51. Unable to return to her previous job, she applied for and received social security disability benefits, as well as disability benefits pursuant to the terms of the insurance policy at issue in this case. *Id.* at 65–66 (as to social security).[1] Upon later investigation, PennLife determined that Offill was not "totally disabled" as required by the terms of her policy, and terminated pay-

---

1. Both parties indicate that Offill applied for and received disability benefit payments pursuant to the terms of the insurance policy at issue in this case. Specifically, in its Memorandum in Support of its Motion for Summary Judgment, the Defendant states that "PennLife paid Plaintiff $1,000 a month in disability benefits under the Policy, from April 1, 2000, through February 2004, for a total of $46,033.34," citing "Exhibit 'C'" in support. Doc. # 13 (Def.'s Mem. Supp.) at 2–3. The referenced Exhibit C does not support the Defendant's statement. Likewise, Offill points to nothing to support her contention that she applied for and was paid benefits under the policy. Since both parties agree on the basic proposition that Offill did apply for and receive some disability benefits under the policy, the Court will assume these facts to be true, for purposes of ruling on the Motions herein.

ments of future benefits thereunder. Doc. # 13, Ex. E (PennLife Ltr, dated Mar. 3, 2004).

Offill brings this suit, alleging that Penn-Life breached its contract with her by ceasing to pay her disability benefits, as required by the insurance policy. Doc. # 1, Ex. A (Compl.).[2] PennLife has filed three motions in this case. First, PennLife moves the Court for leave to file a counterclaim against Offill, based on evidence it recently acquired, indicating that she was not entitled to the benefits she previously received under the policy, and seeking recovery of those benefits. Doc. # 12. PennLife also moves the Court for summary judgment on Offill's claim, asserting that its investigation clearly establishes that Offill is not "totally disabled," which is a requisite for collection under the policy; thus, PennLife has no contractual obligation to pay future disability benefits thereunder. Doc. # 13. Finally, PennLife moves to dismiss the case for Offill's alleged failure to comply with various Court orders. Doc. # 20. The Court will discuss each of the Defendant's Motions, in the order in which they were filed.

## I. MOTION FOR LEAVE TO FILE COUNTERCLAIM (DOC. # 12)

The Defendant first moves the Court for leave to file a counterclaim, in accordance with Federal Rule of Civil Procedure 13(f). Doc. # 12. The Defendant alleges that, during discovery, it received information from the Plaintiff's medical records, which indicates that the Plaintiff's disability was not the result of the February, 2000, accident, but rather was caused by her osteoporosis and chronic obstructive pulmonary disease. Doc. # 12 (Def.'s Mot. Leave File Counterclaim) (citing Doc. # 12, Ex. C (Conkin Decl.); Doc. # 12, Ex. C1 (Pl.'s Med. Recs.)). The Defendant received the subject medical records from the Plaintiff's physicians, pursuant to its discovery requests, between April 25, 2006, and May 4, 2006. Doc. # 12, Ex. C (Conkin Decl.) ¶¶ 6–8. The Defendant filed the instant Motion on May 16, 2006. Doc. # 12.

Federal Rule of Civil Procedure 13(f) provides that "[w]hen a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by leave of court set up the counterclaim by amendment." Fed.R.Civ.P. 13(f). The Defendant here asserts that the Court should sustain its motion based on the "when justice requires" standard of Rule 13(f). Doc. # 12 at 4–5.

The seminal Sixth Circuit case interpreting this Rule 13(f) language is *Budd Co. v. Travelers Indem. Co.*, 820 F.2d 787 (6th Cir.1987). In *Budd*, the plaintiff sought declaratory judgment defining the parties' liability for attorneys' fees in related proceedings. *Id.* at 791. The defendant had notice that it had overpaid its pro rata share of attorneys' fees at the time the complaint was filed, yet it did not seek leave to file a counterclaim until after the district court ruled on the propriety of the fee apportionment schedule. *Id.* at 791 & n. 2. The district court granted the defendant's motion for leave to file a counterclaim; the plaintiff appealed, claiming that the district court had abused its discretion in granting the defendant's motion. *Id.*

In affirming the district court's decision, the court instructed that the decision to allow a party to amend in order to add a counterclaim "is a matter of judicial discretion." *Id.* Further, the "when justice requires" clause of Rule 13(f) is "especially flexible and enables the court to exercise its discretion and permit amendment whenever it seems desirable to do so." *Id.* at 791–92 (citation omitted).

> In exercising its discretion under Rule 13(f), the district court must balance the equities, including whether the non-moving party will be prejudiced, whether additional discovery will be required, and whether the court's docket will be strained. Courts appear particularly hesitant to deny amendment, even at late stages in the proceedings, when the interest in resolving all related issues militates in favor of such a result and no prejudice is demonstrated.

---

**2.** Offill originally filed this action in state court, but PennLife removed the case to this Court based on the Court's diversity jurisdiction over these parties. Doc. # 1 (Not. of Removal).

*Id.* at 792 (internal quotation and citations omitted). Based on this reasoning, the appellate court ultimately concluded that the district court's determination that the plaintiff would not be prejudiced by allowing the omitted counterclaim was not an abuse of discretion, since the defendant pointed to no evidence to the contrary. *Id.; see also Schoen v. Grand River Navigation Co.,* 2007 WL 127913, *1, 2007 U.S. Dist. LEXIS 2019, *3–4 (E.D.Mich. Jan. 11, 2007) (allowing amended counterclaim, under reasoning set forth in *Budd* ).

The Defendant asserts that the facts and circumstances of this case demonstrate that the Court should sustain its request for leave to file the subject counterclaim. In support of that contention, the Defendant asserts that its Motion was timely filed, that the Plaintiff will not be prejudiced if the Court grants the Motion, that no discovery beyond that initially contemplated will be necessary and that the omitted counterclaim arises out of the same core of operative facts and is, therefore, compulsory. Doc. # 12 (Def.'s Mot. Leave File Counterclaim) at 4–5. The Plaintiff provides no response.

In balancing the equities of this case, particularly considering that the Plaintiff has asserted no prejudice from such a decision, and in heeding the Sixth Circuit's warning that this Court should be hesitant to deny amendment when the interest in resolving all related issues militates in favor of such a result and no prejudice is demonstrated, the Court SUSTAINS the Defendant's Motion for Leave to File a Counterclaim (Doc. # 12). Same should be filed instanter.

## II. MOTION FOR SUMMARY JUDGMENT (DOC. # 13)

The Defendant also moves the Court for summary judgment on the Plaintiff's claim, asserting that its investigation clearly establishes that the Plaintiff is not "totally disabled," which is a requisite for collection under the policy, and, thus, the Defendant has no contractual obligation to pay future disability benefits thereunder. Doc. # 13. The Court will first look at the applicable facts and then turn to a discussion of the pertinent legal standards and how those standards apply to the facts presented here.

### A. Facts Applicable to Defendant's Motion for Summary Judgment [3]

In accordance with the policy at issue in this case, the Defendant is obligated to provide certain benefits to the Plaintiff, in the event of her "total disability." Doc. # 1, Ex. A (Policy) at 6, 9. The policy defines "total disability" as "[being] unable to engage in any employment or occupation for which you . . . are or become qualified by reason of education, training or experience." *Id.* at 6.

Prior to 2000, the Plaintiff worked for approximately 35 years as a punch press operator for two different manufacturing companies. Doc. # 14 (Offill Dep.) at 17–20.[4] On February 24, 2000, the Plaintiff fell at work and sustained an injury to her back. *Id.* at 51. The Plaintiff's treating chiropractor, Dr. Derek Black, determined that, after the Plaintiff's accident, there were no positions at the Plaintiff's place of employment to which she could return and that she was "totally disabled." *Id.* at 61; Doc. # 19, Attach. # 1 (Black Aff.). The Plaintiff then applied for and received social security disability benefits. Doc. # 14 (Offill Dep.) at 65–66. The Plaintiff also applied for disability benefits, pursuant to the terms of the insurance policy at issue in this case, and received such benefits from April 1, 2000, through February 1, 2004.[5]

In an unrelated matter, the Plaintiff's husband ("Mr.Offill") also filed a claim for benefits from the Defendant. Doc. # 13, Ex. C (Morris Aff.) ¶ 2. As part of the investigation of Mr. Offill's claim, the Defendant gained

---

**3.** Since this case comes before the Court on the Defendant's Motion for Summary Judgment (Doc. # 13), the Court sets forth the facts and circumstances giving rise to such Motion in the manner most favorable to the Plaintiff. *Servo Kinetics, Inc. v. Tokyo Precision Instruments,* 475 F.3d 783 (6th Cir.2007).

**4.** By education, the Plaintiff is also qualified as a nurse's assistant. Doc. # 14 (Offill Dep.) at 16.

**5.** *See supra* note 1 regarding evidence of the Plaintiff's application for and receipt of disability insurance payments.

information indicating that the Plaintiff was "working" at her husband's towing business, thereby indicating that she was not "totally disabled." Doc. # 13, Ex. D/D1 (Taped Tel. Conv.) at 23–38. The Defendant gained the subject information from two sources: a recorded telephone conversation[6] between a representative of the Defendant and the Plaintiff regarding Mr. Offill's claim, and (2) through a hired investigator's observances of the Plaintiff, at Mr. Offill's business. *Id.* at 1–40; Doc. # 13, Ex. I (Rucker Decl.). The information gathered by the Defendant indicates that, although the Plaintiff was not actually receiving a paycheck for her work,[7] she answered the investigator's question, while the investigator was on-site at the business and the Plaintiff was sitting at the business's reception desk, and she also answered telephone calls for her husband's towing business, both at the place of business and at their home. Doc. # 13, Ex. D/D1 (Taped Tel. Conv.) at 23–38; Doc. # 13, Ex. I (Rucker Decl.).

To contradict the Defendant's evidence regarding her disability, the Plaintiff points to the determinations of her disability, by Dr. Black and the Social Security Administrator. Doc. # 14 (Offill Dep.) at 65; Doc. # 19, Attach. # 1 (Black Aff.).

### B. *Summary Judgment Standard*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir.1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Mich. Prot. & Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v.*

---

**6.** The Defendant asserts that the Plaintiff's recorded statements are admissible, under Federal Rule of Evidence 801(d)(2). Doc. # 13 (Def.'s Mem. Supp.) at 6 n. 1. The Plaintiff does not take exception to this assertion. The Court need not determine whether the assertion is legally sound at this time, because the Court's decision herein would be the same, with or without consideration of the Plaintiff's recorded statements.

**7.** The evidence indicates that neither the Plaintiff nor her husband actually received a formal weekly pay check from the husband's business. Doc. # 13, Ex. D/D1 (Taped Tel. Conv.) at 26, 27, 33.

*Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.1992), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### C. Breach of Contract

 The Ohio Supreme Court has stated that the word "breach," as applied to the law of contracts, is "defined as a failure without legal excuse to perform any promise which forms a whole or part of a contract, including the refusal of a party to recognize the existence of the contract or the doing of something inconsistent with its existence." *National City Bank v. Erskine & Sons, Inc.,* 158 Ohio St. 450, 110 N.E.2d 598, syl. ¶ 1

(1953). Ohio courts recognize that a breach of contract action is "pleaded by stating the terms of the contract, performance of plaintiff's obligations under the contract, breach by the defendant, consideration and damages." *Landskroner v. Landskroner,* 154 Ohio App.3d 471, 481, 797 N.E.2d 1002 (Ct. App.2003) (citation omitted).

The Plaintiff alleges that she performed all conditions precedent, as required by the contract at issue (to include being "totally disabled," as defined by the contract), and the Defendant breached the contract by failing to continue to pay her claims for disability, as required thereunder. Doc. # 1 (Compl.). The Defendant argues that it is no longer required to pay disability benefits to the Plaintiff because she is not "totally disabled." Doc. # 13 (Def.'s Sum. J. Mot.).

There are two points of contention between the parties, both pertaining to whether the Plaintiff is "totally disabled." The first disagreement is a legal one and goes to the meaning of the phrase "totally disabled." Specifically, the issue is whether that phrase means that the Plaintiff is unable to perform *her previous occupation* or whether it means that she is unable to perform *any occupation.* The parties also have a factual disagreement as to whether the Plaintiff's disabilities satisfy either or both of the legal definitions of "totally disabled" discussed below.

### 1. Meaning of Phrase "Totally Disabled"

As to the meaning of the phrase "totally disabled," the Defendant points to the contract language, which defines the phrase as "[being] unable to engage in *any employment or occupation* for which you ... are or become qualified by reason of education, training or experience." Doc. # 1, Ex. A (Policy) at 6 (emphasis added). The Defendant argues that the contractual requirement that the Plaintiff only be considered "totally disabled" if she is unable to perform *any occupation* is clear and unambiguous and is, therefore, not subject to alteration. Doc. # 13 (Def.'s Sum. J. Mot.) at 10 (citing *Chaney v. Acceleration Life Ins. Co.,* 2001 WL 1608460, 2001 Ohio App. LEXIS 5675 (Ct. App. Dec. 18, 2001)).

The Plaintiff, on the other hand, argues that Ohio courts have interpreted similar

contract language to mean that an employee is "totally disabled," if she is unable to perform the work of *her previous occupation*, irrespective of whether she is able to perform work in some other occupation. Doc. # 19 (Pl.'s Mem. O'ppn) at 6–9 (citing *Gibbons v. Metro. Life Ins. Co.*, 135 Ohio St. 481, 487, 21 N.E.2d 588 (1939) & *Davis v. Classic Life Assur. Co.*, 114 Ohio App.3d 688, 683 N.E.2d 1161 (Ct.App.1996)).

It is true that some Ohio courts have liberally interpreted similar contract language to mean that the employee must prove only that she is unable to perform *her previous occupation*, in order to prove that she is totally disabled, *Gibbons v. Metro. Life Ins. Co.*, 135 Ohio St. 481, 21 N.E.2d 588 (1939),[8] while other courts have interpreted similar language more narrowly to mean that the employee must show that she is unable to perform *any occupation*, in order to so prove, *Stuhlbarg v. Metro. Life Ins. Co.*, 143 Ohio St. 390, 55 N.E.2d 640 (1944).[9] The Court here finds it unnecessary to resolve the legal issue of the meaning of the contract

8. The insurance policy, in *Gibbons*, provided that the insured would be considered "totally and permanently disabled" in the event that the insured "for lifetime [will] be unable to perform any work or engage in any business for compensation or profit." *Gibbons v. Metro. Life Ins. Co.*, 135 Ohio St. 481, 21 N.E.2d 588, syl. ¶ 2 (1939). The *Gibbons* Court relied on the maxim that "insurance policies should be given a liberal construction in favor of the insured," in opining that,

> To construe the language "totally and permanently disabled ... to perform any work or engage in any business for compensation or profit" literally is to say that to entitle an insured to disability benefits he must have become so utterly helpless as to be incapable of performing work of any kind for remuneration or profit. Such could not have been the intention of the contracting parties.

*Id.* at 486, 21 N.E.2d 588. The Court ultimately interpreted the phrase "totally disabled" to mean unable to perform the insured's former occupation or "[unable] to perform the work for which he was qualified." *Id.* at 488, 21 N.E.2d 588. Despite the Ohio Supreme Court's seemingly contradictory later holdings in *Stuhlbarg* and *Myers*, as explained, *infra* note 9, Ohio Appellate courts have subsequently applied the reasoning in *Gibbons* to find that an insured only has to be unable to perform the insured's *former* occupation, as opposed to *any* occupation, to be considered "totally disabled." *E.g., Davis v. Classic Life Assur. Co.*, 114 Ohio App.3d 688, 692, 683 N.E.2d 1161 (1996) (determining that insured was "totally disabled," despite physician's order that insured could work in other jobs that required him to lift less than 35 pounds).

9. The insurance policy in *Stuhlbarg* provided that to be "totally and permanently disabled" the insured had to be "unable at any time to perform any work or engage in any business for compensation or profit." *Stuhlbarg v. Metro. Life Ins. Co.*, 143 Ohio St. 390, 392, 55 N.E.2d 640 (1944). In apparent contradiction to its earlier holding in *Gibbons*, the Ohio Supreme Court stated that, [u]nder the terms of a disability insurance policy providing compensation in case of total disability, the test of the insured's ability to perform any labor for compensation is not limited strictly to the occupation or vocation in which the insured may be engaged at the time his disability accrued, but extends to any comparable employment for which the insured is fitted by education, experience and physical condition.

*Id.* syl. ¶ 4, 21 N.E.2d 588. Subsequent to *Stuhlbarg*, the Ohio Supreme Court also addressed this issue in *Myers v. Travelers Ins. Co.*, 14 Ohio St.2d 76, 236 N.E.2d 209 (1968).

The policy language in *Myers* provided that, in order to recover, an insured had to be "wholly disabled by bodily injuries or disease, and will be permanently, continuously and wholly prevented thereby for life from engaging in any occupation or employment for wage or profit." *Id.* at 77, 236 N.E.2d 209. Besides considering the contract language, the Court also pointed to Ohio Revised Code Annotated § 3923.011, which provided that, "[a]s used in any policy of sickness and accident insurance delivered, issued for delivery, or used in this state, unless otherwise provided in the policy or in an indorsement thereon or in a rider attached thereto, [the phrase 'total disability'] means inability to perform the duties of any gainful occupation for which the insured is reasonably fitted by training, experience, and accomplishment." *Id.* at 78, 236 N.E.2d 209; *compare* Ohio Rev.Code Ann. § 3923.011 (2006) (same). The Court then looked to three approaches to interpreting the phrase "total disability," with the first being the *Stuhlbarg* approach set forth above. *Myers*, 14 Ohio St.2d at 78, 236 N.E.2d 209 (quoting *Stuhlbarg v. Metro. Life Ins. Co.*, 143 Ohio St. 390, 55 N.E.2d 640, syl. ¶ 4 (1944)). The Court also looked to Corpus Juris Secundum in stating that, "[d]isability is total if insured cannot perform any substantial part of the labor required in following some remunerative occupation." *Id.* (quoting 45 Corpus Juris Secundum 1174, Section 980). Finally, the Court stated, without citation, that "[a]nother approved definition is that one is totally disabled when he cannot earn wages or remuneration in some occupation or gainful pursuit within his capacity and which reasonably can be demanded of him." *Id.* at 78–79, 236 N.E.2d 209. Without comment on which of the three approaches it was applying,

phrase "totally disabled," at this juncture, because it finds that the Plaintiff has set forth sufficient facts to create a genuine issue of material fact as to whether she is "totally disabled," *using either definition of that phrase.*

2. *Genuine Issue of Material Fact as to Plaintiff's Total Disability*

█ Besides disputing which definition of the phrase "totally disabled" the Court should apply, the parties also disagree about whether the Plaintiff has set forth sufficient facts to create a genuine issue of material fact as to whether she meets the proper standard.

As previously noted, the Defendant argues that the Plaintiff was "working" at her husband's business, as evidenced by the fact that she answered telephone calls for her husband's towing business, both at the place of business and at their home, and also because she answered the investigator's question about the business, while sitting at the business's reception desk. The Defendants conclude that this evidence demonstrates that the Plaintiff was working as a dispatcher in her husband's business, establishing that she was not totally disabled.

In contrast, the Plaintiff has presented an affidavit from her treating chiropractor, wherein the chiropractor opines that the Plaintiff is totally disabled, based on a review of the Plaintiff's medical records, an examination of the Plaintiff and a review of the

insurance policy in question. Doc. # 19, Attach. # 1 (Black Aff.). The Plaintiff also presents evidence that the Social Security Administration has declared that she is disabled.[10] Doc. # 14 (Offill Dep.) at 65–66.

Based on the evidence presented, the Court concludes that the Plaintiff has presented more than a scintilla of evidence in support of her position that she is unable to perform her previous occupation as a punch press operator and that she is unable to perform any occupation, such that a jury could reasonably find for the Plaintiff, using either of the two definitions of "total disability" relied on by Ohio courts. Since the evidence of record creates a genuine issue of material fact as to whether the Plaintiff is "totally disabled," the Defendant's Motion for Summary Judgment (Doc. # 13) is OVERRULED.

III. MOTION TO DISMISS FOR FAILURE TO COMPLY WITH THIS COURT'S ORDERS (DOC. # 20)

In accordance with Federal Rule of Civil Procedure 41(b), the Defendant next moves the Court to dismiss the Plaintiff's Complaint, for failure to comply with Court orders. Doc. # 20. Specifically, the Defendant objects to the Plaintiff's failure to submit to it a draft of the Joint Proposed Final Pretrial Order at least 15 days before the filing date for said order, pursuant to General Order No. 1[11] and in concert with the filing schedule established by this Court. *Id.* at 6–7.

---

the *Myers* Court determined that, based on the only evidence in the record, the Plaintiff's deposition that "refuted his claim of [being] 'wholly disabled,' " the court was "thereby left no alternative but to reject the total disability claim." *Id.* at 79, 236 N.E.2d 209.

10. In a recent unreported opinion, the Sixth Circuit determined that the Social Security Administration's ("SSA's") determination of disability is relevant to a determination of total disability under an insurance policy, but "it is not dispositive given the substantial differences between the SSA's and the [insurer's] plan's working definitions of disability." *Sparks v. Unum Life Ins. Co.*, 2000 WL 1033003, *4, 2000 U.S.App. LEXIS 18169, *11 (6th Cir. July 21, 2000). The parties in this case point to no evidence that indicates what definition of disability the SSA used in determining that the Plaintiff was entitled to benefits. Therefore, at most, the fact that the Plain-

tiff is entitled to SSA benefits is relevant to the determination of whether she is "totally disabled" under the insurance policy in question, without being dispositive.

11. Specifically, the Defendant points to the following language in General Order No. 1, which pertains to this Court's pretrial procedures:

Counsel for plaintiff(s) shall submit to counsel for defendant(s) a first draft of the Joint Proposed Final Pretrial Order (without, of course, the material which is within the knowledge of defendants, such as lists of witnesses, exhibits, etc.). Such draft shall be mailed or otherwise delivered *at least fifteen working days before* the filing date for the Joint Proposed Final Pretrial Order.

S.D. Ohio (W.Div.) Ct. Gen. Order 1, ¶ 6(a) (2003) (emphasis added).

Pursuant to the Court's Preliminary Pretrial Order, the parties' Joint Proposed Pretrial Order was due on September 13, 2006. Doc. #5 (Prelim. Pretrial Order). The Plaintiff filed a proposed pretrial order on the requisite date, one day after the Defendant filed the subject Motion, without submitting a draft of said proposed order to the Defendant, in accordance with General Order No. 1. Docs. #20, #21. The Defendant filed its proposed pretrial order on September 18, 2006. Doc. #23. No *joint* proposed pretrial order has been filed to date.

■ The Plaintiff has exhibited a pattern of noncompliance with court orders, from the onset of this case. *See* Doc. #9 (Order. Overruling Def.'s Mot. Dismiss). This is the second time the Defendant has moved this Court to dismiss, for the Plaintiff's failure to follow Court orders. Doc. #6 (Def.'s Mot. Dismiss).

As noted by the Court in its Order overruling the Defendant's previous Motion to Dismiss, Fed.R.Civ.P. 41(b) authorizes the dismissal, with prejudice, of a cause of action as a sanction for a plaintiff's failure to prosecute actions or comply with relevant court rules or orders. Fed. R. Civ. Proc. 41(b). In general, a Rule 41(b) dismissal "operates as an adjudication upon the merits." *Id.*

■ The authority to dismiss a case under Rule 41(b) "is available to the district court as a tool to effect management of its docket and avoidance of unnecessary burdens on the tax-supported courts and opposing parties." *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir.1999) (quotation omitted). District courts are permitted substantial discretion in determining whether dismissal is appropriate. *Id.* However, the Sixth Circuit has emphasized that dismissal is a "harsh" remedy reserved for "extreme situations where a plaintiff has engaged in a clear pattern of delay or contumacious conduct." *Holt v. Pitts*, 619 F.2d 558, 562 (6th Cir.1980) (reversing order of dismissal in § 1983 action). "The sanction of dismissal is appropriate only if the attorney's actions amounted to failure to prosecute and *no alternative sanction* would protect the integrity of the pretrial process." *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 594 (6th Cir.2001) (em-

phasis in original) (quotation omitted). The Sixth Circuit has often reversed district court decisions, dismissing a complaint under Rule 41(b), absent a showing of bad faith or notice to the plaintiff that the court is contemplating involuntary dismissal. *E.g., Nader v. Land*, 433 F.3d 496, 501–02 (6th Cir.2006) (reversing lower court's dismissal and citing other similarly reversed cases).

Lacking an indication of bad faith on the part of the Plaintiff, the Court OVERRULES the Defendant's Motion to Dismiss (Doc. #20) and, as an alternative to dismissal, orders the parties to file a Joint Proposed Final Pretrial Order with this Court thirty (30) days from the date of this Order. The parties are further ordered to comply with the provisions of General Order 1, in communicating with each other in preparation for the timely filing of said Joint Order. The Plaintiff is further required to provide the Court with notice of her compliance with the provisions of General Order 1, as applied to the preparation and filing of the Joint Proposed Final Pretrial Order, on the Docket Record. Should the Plaintiff fail to comply with this or any other Order of the court, the Court will consider all appropriate sanctions including dismissal of this action with prejudice.

## IV. CONCLUSION

The Defendant's Motion for Leave to File Counterclaim (Doc. #12) is SUSTAINED. The Defendant's Motion for Summary Judgment (Doc. #13) is OVERRULED. The Defendant's Motion for Dismissal for Failure to Comply with this Court's Orders (Doc. #20) is OVERRULED.

Counsel of record will note that a telephone conference call will be initiated by the Court to discuss a trial date and other dates leading to the resolution of this litigation, at 8:30 a.m. on Friday, April 13, 2007.